516 P.2d 583

**Margaret L. BARNETTE, a widow,
Appellant,**

v.

**James F. McNULTY, Jr., Executor of the Estate of Wilson M. Barnette, Deceased, Appellee.**

**No. 2 CA–CIV 1454.**

Court of Appeals of Arizona,
Division 2.

Dec. 13, 1973.

Rehearing Denied Jan. 10, 1974.

Review Denied Feb. 5, 1974.

Wales, Collins & Davies, P.C. by Thomas Amberg and Joseph C. Meier, Phoenix, for appellant.

Polley & Polley by Wesley E. Polley, Bisbee, for appellee.

## OPINION

HOWARD, Judge.

The appellant-plaintiff in this case disputed the testamentary disposition by her deceased husband of certain property and contended that the property was her sole and separate property upon her husband's death by virtue of an inter vivos trust. This appeal was undertaken when the trial court disagreed with appellant's position and entered judgment in favor of appellee.

Appellant's questions for review revolve around three general areas: (1) Did the deceased create a valid inter vivos trust? (2) Did the deceased revoke the trust? (3) Did the court err in the admission of certain oral testimony?

The facts considered in the light most favorable to upholding the judgment of the trial court are as follows. Appellant and her deceased husband, Wilson M. Barnette, were married on September 17, 1967. They took up residence at the home owned by appellant prior to their marriage. Mr. Barnette was the owner and operator of a moving and storage business incorporated as Van Pack of Arizona, Inc., and appellant was unemployed at the time of the marriage. Appellant was subsequently employed by the corporation and became secretary-treasurer. As such, she kept the books, made the deposits and acted generally as office manager. Her starting salary of $75 per week was raised to $125 per week, which continued until shortly after Mr. Barnette died. Prior to his death, appellant was removed as secretary-treasurer of the corporation even though she continued to receive a salary.

In early March of 1970, Mr. Barnette was hospitalized with high blood pressure and diabetes. On March 12th he executed a power of attorney to appellant so she could continue to run the business. In the spring of 1970, appellant discussed with Mr. Barnette a book that she had read written by a man called Dacy, entitled "How To Avoid Probate". They discussed the book and the creation of a "Dacy Trust" while Mr. Barnette was in the hospital and again when he came home. On March 25, 1970, Mr. Barnette executed a form contained in the book entitled "Declaration of Trust". In this declaration of trust Mr. Barnette declared himself to be the trustee of his shares of the capital stock of Van Pack of Arizona, Inc., for the use and benefit of the appellant. It also provided that upon Mr. Barnette's death, appellant was to be appointed as successor trustee—the successor trustee was to transfer all of his shares of the trust to the beneficiary. Another provision stated:

"6. I hereby reserve unto myself the power and right at any time during my lifetime, before actual distribution to the beneficiary hereunder, to revoke in whole or in part or to amend the Trust hereby created without the necessity of obtaining the consent of the beneficiary and without giving notice to the beneficiary. Anyone of the following acts shall be conclusive evidence of such revocation of this Trust:

(a) The delivery to the issuer or transfer agent of the shares by me of written notice that this Trust is revoked in whole or in part;

(b) the transfer by me of my right, title and interest in and to said Shares;

(c) the delivery by me to the issuer or transfer agent of the Shares of written notice of the death of the beneficiary hereunder. . . ."

At the time of the execution of the trust document and up to the time of trial there was issued an outstanding certificate No. 6 dated February 18, 1968, for 201 shares of the capital stock of Van Pack of Arizona, Inc., in the name of Mr. Barnette. The stock was not transferred on the books of the corporation to Mr. Barnette as trustee nor was the assignment on the back of the stock certificate executed by Mr. Barnette.

In June of 1970, appellant became ill and it was not long before marital difficulties arose between the parties. Mr. Barnette filed a divorce action in Cochise

County and appellant filed a divorce action on July 15, 1970, in Pima County.[1] On July 9, 1970, Mr. Barnette consulted with his attorney, James F. McNulty, Jr., and discussed both his will and his marital problems. Mr. Barnette told Mr. McNulty that Van Pack of Arizona, Inc. was his corporation, that his efforts had created it, that it was separate property, that his wife owned no interest, and that he wanted his son to succeed to his interest. By Mr. Barnette's explicit direction the will drafted by Mr. McNulty and subsequently executed by Mr. Barnette specifically referred to the Van Pack Corporation as being owned solely by Mr. Barnette.

In July of 1970, Mr. Barnette consulted with Mr. Fred Talmadge, an attorney in Cochise County, concerning his domestic problems and as a result Mr. Talmadge filed on his behalf a divorce complaint in Cochise County on July 17, 1970. Mr. Talmadge testified that in his consultations leading up to the filing of the divorce complaint Mr. Barnette told him that the Van Pack Corporation belonged to him; that he understood the appellant might be filing for divorce herself and that he was sure she would attempt to take his interest in Van Pack from him, they were separated, he was keeping her on the corporation payroll as an employee because she was still his wife and he was under a legal obligation to support her whether he liked it or not.

Mr. Barnette died in the hospital on July 23, 1970 with appellant at his bedside.[2]

## WAS A VALID TRUST CREATED?

The essential elements of a trust are: (a) A competent settlor and trustee; (b) clear and unequivocal intent to create a trust; (c) an ascertainable trust res and (d) sufficiently identifiable beneficiaries.

Appellee contends that no trust was created in this instance because the settlor, Mr. Barnette, failed to have the stock transferred on the corporation books to himself as trustee and did not execute the assignment on the reverse side of the stock certificates. We do not agree with this contention. The owner of shares of stock in a corporation may make himself trustee of the shares for another by oral or written declaration of the trust without a delivery of any document to the beneficiary or any change in the corporation's records. Bogert, "Trusts and Trustees", 2nd Ed. § 142. Where the settlor is also the trustee, Scott on Trusts, 3rd Ed. § 32.5 states:

"We have been considering the situation that arises when the owner of property conveys it to another person as Trustee. Where ·he declares himself Trustee of the property, however, it is obvious that the delivery of the subject matter to the beneficiary is neither necessary nor appropriate. Since his intention is to retain title to the property, although he is to hold it for the benefit of another, it is clear that it would be inconsistent with his intention for him to surrender the property."

Further, Restatement (Second) of Trusts, § 17 at 59 states: "A trust may be created by: (a) a declaration by the owner of property that he holds it as Trustee for another person; . . ." The comment on clause (a) states that "if the owner of property declares himself trustee of the property, a trust may be created without a transfer of title to the property." It is therefore clear that Mr. Barnette created a valid trust.

## WAS THE TRUST REVOKED?

Appellant contends that the trust in this case was not revoked since Mr. Barnette

---

1. In the divorce action appellant alleged the interest of the parties in the corporation was *community property*. Since appellant did not obtain any relief based on this inconsistent allegation the doctrine of judicial estoppel does not apply. See In re Estate of Cohen, 105 Ariz. 337, 464 P.2d 620 (1970).

2. Appellant did not deliver the trust instrument to the executor of the estate of her deceased husband because she did not remember that it existed until about a month after the death when she found it in her desk drawer.

did not attempt to revoke the same according to the mandate of the trust document. This contention is without merit. Although the trust provisions set forth certain acts which would be deemed conclusive evidence of revocation, they are by no means the exclusive ways in which the trust could be revoked by Mr. Barnette. Restatement (Second) of Trusts, § 330 comment *i* at 139, states:

". . . If the settlor reserves a power to revoke the trust but does not specify any mode of revocation, the power can be exercised in any manner which sufficiently manifests the intention of the settlor to revoke the trust . . . It may be sufficient that he manifest his decision to revoke the trust by communicating it to the beneficiaries or to third parties. . . ."

Turning our attention to the terms of the trust instrument we note that it gives the settlor the power to revoke without the necessity of obtaining the consent of and/or giving notice to the beneficiary. As set forth in Restatement (Second) of Trusts, § 330, comment *i*, the settlor can revoke a trust by communicating his decision to do so to the trustee. In the case sub judice, the settlor is also the trustee. It would be absurd to require the settlor to call himself up on the telephone as trustee and tell himself that he is revoking the trust. It would be equally absurd to have the settlor send himself a letter as trustee to inform himself as trustee that the trust is to be terminated. The appellee in this case merely had to show that Mr. Barnette intended to terminate the trust and some communication on his part to the beneficiary or to a third party manifesting his decision to revoke.

Since the trust instrument stated that revocation could occur only during the lifetime of the settlor and since the will he executed did not take effect during his lifetime, we cannot consider the provisions of the will as a revocation of the trust. Leahy v. Old Colony Trust Company, 326 Mass. 49, 93 N.E.2d 238 (1950); see also

Annot. 18 A.L.R.2d 1010 et seq. We do believe, however, that the statements made by the deceased to Mr. McNulty prior to the time the will was executed and to Mr. Talmadge, his attorney in the divorce action, manifested his decision to revoke the trust and support the judgment of the trial court.

Since one of the issues in this case was whether Mr. Barnette manifested an intent to revoke the trust by making oral declarations to a third person, appellant's contention that the court erred in allowing the appellee and attorney Fred Talmadge to testify as to what Mr. Barnette had told them about his ownership of the shares is without merit. The communications to appellee and Talmadge do not come within the rules relating to hearsay testimony. These communications were verbal facts to be proved as any other fact and therefore it was not error to permit such testimony. Carrillo v. Murray & Layne Company, 25 Ariz. 303, 216 P. 689 (1923). Where a material issue was whether certain words were spoken without reference to their truth or falsity the evidence is admissible though it would otherwise be hearsay. Udall on Evidence § 173, p. 346.

Appellant contends that assuming the deceased intended to revoke the trust, he could only do so in writing. As authority for this proposition appellant cites Restatement (Second) of Trusts § 38(4). We find that appellant's reliance on that authority is inappropriate. That section of the Restatement deals with the creation of a trust and states that if the owner of property makes a written declaration of trust he cannot introduce parole evidence in the absence of grounds for rescission or reformation to show that he really did not intend to create a trust. The cited authority has nothing to do whatsoever with the method of revoking a written trust when it contains a reservation of the power to revoke but does not state how the revocation is to be effected. The apposite section of the Restatement is § 330 and comment *i*

See also Gifford Estate, 18 Pa.D. & C.2d 769, 9 Fiduciary 631 (1959) which holds that where no method of revoking a revocable trust is set forth in the instrument the trust may be revoked informally and orally.[3]

The judgment is affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.

3. As to the necessity of a *written* revocation of a declaration of trust when the res involves an *interest* in *real property* see Coleman v. Coleman, 48 Ariz. 337, 61 P.2d 441 (1936).