589 P.2d 1314

In the Matter of the ESTATE OF Alfred
Benjiman TRAVERS, Jr., Deceased.

Faye PETERS, Appellant,

v.

Ruth T. MELVILLE, as personal repre-
sentative of the Estate of Alfred Benji-
man Travers, Jr., Deceased, Appellee.

No. 2 CA–CIV 2830.

Court of Appeals of Arizona,
Division 2.

Oct. 17, 1978.

Rehearing Denied Nov. 22, 1978.

Review Denied Dec. 19, 1978.

Darrel G. Brown, Tucson, for appellant.

Gray & Perry by Dennis H. Gray, Tucson,
for appellee.

OPINION

HOWARD, Judge.

This is a will contest. Appellant sought
to probate decedent's will of March 12,
1971. The trial court made findings of fact
and conclusions of law holding that the will
was destroyed by the decedent with an in-
tent to revoke and decedent therefore died
intestate. Appellant contends the trial
court's findings of fact and conclusions of
law were not supported by the evidence.
We do not agree.

The evidence discloses that in September
of 1968 the decedent executed a will leaving
his estate to his mother with the proviso
that if she predeceased him his estate would
go to his sister, appellee Ruth Melville.
This will was revoked on March 12, 1971
when he executed another will. His attor-
ney gave him both the original of the will
and a duplicate original. Decedent deliv-
ered the duplicate original to the appellant.
When decedent executed the 1968 will, he
was advised by his lawyer that he could
revoke a will by destroying it.

The 1971 will, which is at issue here,
provided that decedent's entire estate would
go to his mother but if she predeceased him,
it was to go to appellee's three daughters
and to his friend, the appellant. This will
specifically mentioned Mrs. Melville and
stated that she was purposely omitted.

Decedent's mother died in 1974. Within
90 days of decedent's death on April 4, 1977,
he told Helen King, a close personal friend,
that he intended to execute a new will and

leave his home, which was the bulk of his estate, to her. Within forty-five days of his death, decedent called his attorney and told him that he wanted to come to his office and draft a new will.

After decedent's death, appellee went through his possessions and his safe deposit box and was unable to find decedent's copy of the 1971 will, which was last seen on the day it was given to decedent.

Appellee testified that when she saw her brother at their mother's funeral, he told her that since their mother had died, she would be the beneficiary of his estate. Appellant testified that the decedent told her that he did not get along with his sister. This was countered by testimony from appellee, one of her daughters, and the attorney who drafted the 1968 will.

We start with the proposition that a will can be revoked by the testator if he destroys it with the intent to revoke it. The general rule is when a will which was last seen in the possession of the testator cannot be found after his death, there is a presumption that he destroyed it *animus revocandi*. This rule is usually applied when two or more duplicate original wills were executed, one of the duplicates is traced to the testator's possession prior to his death, and that duplicate cannot be found. The result is a rebuttable presumption that he destroyed it with the intention of revoking both it and any other duplicates. *In re Woods' Estate*, Ohio App., 105 N.E.2d 589 (1952); 79 Am.Jur.2d, Wills, Sec. 611 (1975); Annot., 17 A.L.R.2d 805 at 814–16 (see A.L.R.2d Later Case Service, Vols. 16–18 A.L.R.2d 190); and see *In re Schade's Estate*, 87 Ariz. 341, 351 P.2d 173 (1960). This presumption retires upon the receipt of evidence contradicting it. *In re Schade's Estate, supra.*

Appellant points to three factors which she claims dispel the presumption. First, she points out that appellee, the contestant, was the only one who went through decedent's personal belongings and had an opportunity to destroy the will. She also points to the evidence showing that appellee had been purposely excluded from the 1971 will. She argues it was evident that decedent did not want appellee to get his estate and therefore would not have wanted to die intestate. Further, she contends that the fact the decedent kept records of his expenses and copies of all of his papers and displayed a pattern of making written wills is sufficient to dispel the presumption. We do not agree. The mere fact that a contestant had an opportunity to destroy the will does not of itself overcome the presumption that it was destroyed by the testator with the intent to revoke. It is a circumstance to be considered with other proof. *In re Donigian's Will*, 265 Wis. 147, 60 N.W.2d 732 (1953). Appellee's opportunity to destroy the will, even when considered with the other evidence to which appellant points, does not contradict the presumption, especially when the presumption has been reinforced by evidence that the decedent wanted to write a new will.[1]

Affirmed.

RICHMOND, C. J., and HATHAWAY, J., concur.

---

1. There was no evidence that the decedent intended to revive the 1968 will. See A.R.S. Sec. 14–2509.