836 P.2d 420

In the Matter of the ESTATE AND TRUST OF Steve J. PILAFAS, deceased.

James S. PILAFAS, Personal Representative and Special Trustee; James S. Pilafas, Irene Pappas and Nicholas Pilafas, Petitioners–Appellees,

v.

ARIZONA ZOOLOGICAL SOCIETY, the American Cancer Society, the American Red Cross, the American Heart Association, the Greek Orthodox Archdiocese of North and South America, the Salvation Army, the National Council of YMCAs, the Boy Scouts of America, Theodore J. Pilafas and Stephanie J. Pilafas, Respondents–Appellants.

No. 1 CA–CV 90–108.

Court of Appeals of Arizona, Division 1, Department D.

Feb. 20, 1992.

Review Denied Sept. 22, 1992.

Jennings, Strouss & Salmon by David J. Estes and John R. Becker, Phoenix, for petitioner-appellee Estate of Steve J. Pilafas and James S. Pilafas.

Case & Bennett by Stephen S. Case, Scottsdale, for petitioners-appellees James S. Pilafas, individually, Nicholas Pilafas and Irene Pappas.

Franz & Davis, P.C. by J. Noland Franz, Phoenix, for respondents-appellants Arizona Zoological Soc., American Cancer Soc., American Red Cross, American Heart Ass'n and Greek Orthodox Archdiocese of North and South America.

Burch & Cracchiolo, P.A. by Guadalupe Iniguez Espinoza and Thomas A. Longfellow, Phoenix, for respondent-appellant Salvation Army.

Gust, Rosenfeld & Henderson by Richard H. Whitney and Michael P. Cullen, Phoenix, for respondents-appellants Nat. Council of YMCAs and Boy Scouts of America.

Stewart & McLean, Ltd. by William H. McLean and Deirdre O. Stewart, Phoenix, for respondent-appellant Stephanie Pilafas.

Bregman & Bregman, P.A. by Mark A. Bregman, Scottsdale, for respondent-appellant Theodore Pilafas.

## OPINION

McGREGOR, Judge.

The remainder beneficiaries (appellants) under an *inter vivos* trust agreement appeal the trial court's determination that Steve J. Pilafas (decedent) revoked his *inter vivos* trust and will and died intestate. Appellants raise two issues on appeal. The first is whether appellees presented sufficient evidence that decedent revoked his will. We find the evidence sufficient and affirm that part of the trial court's judgment. The second issue is whether the trial court erred in determining that decedent effectively revoked his *inter vivos* trust. We hold that the court did err and reverse.

### I.

On August 30, 1982, decedent executed a trust agreement appointing himself trustee of certain described properties for the benefit of himself and other specified beneficiaries. Decedent immediately funded the trust by executing and recording a deed and an assignment that transferred a Phoenix residence and his interest in a note and deed of trust on a mobile home park to himself as trustee under the trust agreement. The trust corpus also included other real property, an agreement of sale, and, eventually, a promissory note payable to the trustee and secured by a deed of trust on real property that decedent acquired on June 2, 1988.

The trust agreement directed the trustee to pay decedent the trust income and any principal amounts that decedent requested in writing. The agreement directed that, upon decedent's death, a portion of the trust estate be distributed to the eight non-profit organizations that are appellants in this case. The remaining portion was to be held in various trusts for decedent's wife, Geraldine P. Pilafas; brother, appellant Theodore J. Pilafas; sons, Steve J. Pilafas, Jr., and John S. Pilafas; and granddaughter, appellant Stephanie J. Pilafas. Decedent explicitly "omitted any provision for his children NICHOLAS S. PILAFAS, IRENE PILAFAS PAPPAS, and JAMES S. PILAFAS...."

Article X of the trust agreement, entitled "Revocation," provided:

> The Settlor may at any time or times during the Settlor's lifetime *by instrument in writing delivered to the Trustee* amend or revoke this Agreement in whole or in part.... This power is personal to the Settlor and may not be exercised by the Settlor's Personal Representative or others. (Emphasis added.)

In accord with the revocation provision, decedent twice amended the trust agreement by instrument in writing. On September 16, 1982, decedent executed a "First Amendment to Trust Agreement" that substituted a new article VIII regarding trustee succession and added a new article XI regarding the sale of trust property. On January 19, 1987, after his divorce, decedent executed a "Second Amendment to Trust Agreement" that revoked article XI and added an amended article III, thereby deleting his former wife as a trust beneficiary and increasing the share to be distributed to the eight non-profit beneficiary organizations.

Decedent simultaneously executed a will and the second trust amendment. The will explicitly excluded decedent's former wife,

disposed of certain personal property, and directed that other personal property be distributed in accordance with a separate written statement. *See* A.R.S. § 14–2513. The will gave the residue of decedent's estate to the trust.

After executing the second amendment to his trust agreement and his new will, decedent apparently improved his relationships with appellees Irene Pappas, James S. Pilafas and Nicholas Pilafas. In communications with his attorney and his family during the last month of his life, decedent indicated an intention to revise his estate plan to include all his children.

Decedent's attorney prepared the trust agreement, the two amendments, and the will, and assisted decedent in executing them. The attorney did not retain decedent's original documents and, to the best of his knowledge, gave decedent the signed originals of the trust agreement, the amendments and the will immediately after they were executed.

Decedent died on September 28, 1988. Subsequently, decedent's son, appellee James S. Pilafas, unsuccessfully searched decedent's house and belongings for the original will and trust documents. No information of record indicates their possible whereabouts.

According to appellees James S. Pilafas and Nicholas S. Pilafas, decedent fastidiously saved important records and was unlikely to have lost his original will and trust. At his death, decedent had a room filled with important documents, including photographs, old divorce papers, his selective service card from 1945, and letters from his children. Appellees also testified that decedent was a man of direct action who sometimes acted impulsively, and who had been known to tear or discard papers that offended him.

On December 2, 1988, appellee James S. Pilafas commenced these proceedings by filing a petition for formal appointment of special administrator and special trustee. On March 8, 1989, he filed a petition for adjudication of intestacy, determination of heirs, determination of revocation of trust, and appointment of personal representa-tive. The petition sought a determination that decedent had revoked his trust agreement and will and died intestate, leaving his five adult children as his lawful heirs. The petition asked the court to authorize James S. Pilafas to transfer all the trust assets to decedent's estate.

Appellants objected to the petition, seeking a determination that decedent had revoked neither his will nor his trust agreement, and asking that the will be admitted to probate. Appellees filed a response and motion for summary judgment that the trial court granted by its order of December 18, 1989. The court determined decedent revoked his trust agreement and his will and died intestate, leaving his five adult children as heirs. The court authorized James S. Pilafas, as special trustee, to transfer all trust assets to the decedent's estate. Appellants timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101.J.

## II.

Appellees claim that decedent revoked his will because that document could not be found in a diligent search of his personal effects and papers after his death. This argument relies on the common law presumption that a testator destroyed his will with the intention of revoking it if the will is last seen in the testator's possession and cannot be found after his death. *Cf. Estate of Travers*, 121 Ariz. 282, 283, 589 P.2d 1314, 1315 (App.1978) (testator presumed to have destroyed with intent to revoke a will last seen in his possession that cannot be found after his death); *see also* A.R.S. § 14–2507.2 (testator revokes will by destroying it with the intent to revoke).

In response, appellants contend that the common law presumption never arose in this case because appellees proffered insufficient evidence that the will was last seen in decedent's possession or that it could not be found after decedent's death. We disagree. In support of their motion for summary judgment, appellees submitted affidavits tending to prove that decedent took

possession of his original will after he executed it; that he meticulously kept important documents; and that appellee James S. Pilafas diligently searched decedent's home after his death and was unable to find the original will. In response, appellants offered no evidence undermining the factual basis for the common law presumption. In our opinion, the trial court correctly determined that decedent revoked his will and died intestate.

### III.

Appellees ask us to extend to revocable *inter vivos* trusts the common law presumption that a will last seen in the testator's possession that cannot be found after his death has been revoked. Appellees' reliance on this common law presumption is misplaced, however, if decedent's trust agreement was not susceptible to revocation by physical destruction.

Unlike the execution of a will, the creation of a trust involves the present transfer of property interests in the trust corpus to the beneficiaries. George G. Bogert and George T. Bogert, *Trusts & Trustees* § 998 (2d ed. rev. 1983). "These interests cannot be taken from [the beneficiaries] except in accordance with a provision of the trust instrument, or by their own acts, or by a decree of a court." *Id.* Even a revocable trust vests the trust beneficiary with a legal right to enforce the terms of the trust. *Continental Bank & Trust Co. v. Country Club Mobile Estates, Ltd.*, 632 P.2d 869, 872 (Utah 1981). The terms of the trust also limit the powers of the settlor and trustee over the trust corpus, even when the settlor declares himself trustee for the benefit of himself and others. *See Estate of Brenner*, 37 Colo.App. 271, 547 P.2d 938, 942 (1976).

The terms of decedent's trust agreement governing revocation provide:

The Settlor may at any time or times during the Settlor's lifetime *by instru-*

*ment in writing* delivered to the Trustee amend or revoke this Agreement in whole or in part.... (Emphasis added.)

Appellants argue that under this provision decedent could exercise his power to revoke the trust only through an "instrument in writing delivered to the Trustee...." We agree.

This court, when not bound by previous decisions or legislative enactments, follows the Restatement of the Law. *See Barnette v. McNulty*, 21 Ariz. App. 127, 129–31, 516 P.2d 583, 585–87 (1973). *Restatement (Second) of Trusts* § 330 (1959) provides:

(1) The settlor has power to revoke the trust if and to the extent that by the terms of the trust he reserved such a power.

(2) Except as stated in §§ 332 and 333, the settlor cannot revoke the trust if by the terms of the trust he did not reserve a power of revocation.

*Restatement* § 330(2) makes it clear that, with two narrow exceptions,[1] a trust is revocable only if the settlor expressly reserves a power to revoke, and the terms of the trust strictly define and limit the reserved power of revocation.

These general principles necessarily entail the more specific rule that when the settlor reserves a power to revoke his trust in a particular manner or under particular circumstances, he can revoke it only in that manner or under those circumstances. Austin W. Scott and William F. Fratcher, *Scott on Trusts* §§ 330, 330.8 (4th ed. 1989) ("Where the settlor reserves a power to revoke the trust in a particular manner, he can revoke it only in that manner."); Bogert and Bogert, *Trusts & Trustees* § 1001. *Accord Connecticut General Life Ins. Co. v. First Nat'l Bank of Minneapolis*, 262 N.W.2d 403, 405 (Minn.1977); *Estate of Button*, 79 Wash.2d 849, 490 P.2d 731, 733 (1971); *Union Trust Co. v. Watson*, 76 R.I. 223, 68 A.2d 916, 918–19 (1949).

---

**1.** *Restatement* § 332 allows a settlor to reform the written instrument creating a trust if he intended to reserve a power of revocation or the power to modify the trust but by mistake omitted the requisite provisions. *Restatement* § 333

provides that "[a] trust can be rescinded or reformed upon the same grounds as those upon which a transfer of property not in trust can be rescinded or reformed." Neither of these provisions applies to the Pilafas trust.

Appellees argue that the language of comment *j* to *Restatement* § 330 indicates that a method of revocation designated in the trust instrument is exclusive only if the language of the trust instrument expressly makes it so. Comment *j* states in pertinent part:

> *Where method of revocation specified.* If the settlor reserves a power to revoke the trust *only* in a particular manner or under particular circumstances, he can revoke the trust only in that manner or under those circumstances.
>
> . . . .
>
> If the settlor reserves a power to revoke the trust by transaction inter vivos, as, for example, by a notice to the trustee, he cannot revoke the trust by his will.
>
> If the settlor reserves a power to revoke the trust only by will, he cannot revoke it by a transaction inter vivos.
>
> If the settlor reserves a power to revoke the trust only by a notice in writing delivered to the trustee, he can revoke it only by delivering such a notice to the trustee....

*Restatement (Second) of Trusts* § 330, comment *j*, at 139–40 (emphasis added).

Appellees urge us to interpret the comment's reference to a settlor's reservation of "a power to revoke the trust only in a particular manner" to mean that decedent was free to revoke his trust in any manner because the instrument does not specify that decedent could revoke *only* by instrument in writing. We find the more reasonable and natural interpretation of the quoted portion of comment *j* is that if a settlor only reserves a power to revoke the trust in a particular manner or under particular circumstances, he can revoke the trust only in that manner or under those circumstances. This interpretation, not the strained construction offered by appellees, explains why comment *j* also states, "If the

settlor reserves a power to revoke the trust by a transaction inter vivos, as, for example, by a notice to the trustee, he cannot revoke the trust by his will." Furthermore, our interpretation accords with the language of *Restatement* § 330 itself, and is followed generally by the commentators and the case law. *See, e.g., Estate of Button*, 490 P.2d at 733.

*Barnette v. McNulty*, 21 Ariz.App. 127, 516 P.2d 583 (1973), on which appellees rely, is plainly distinguishable on its facts. In that case, decedent's written trust instrument first expressly reserved to him the power to revoke the trust without specifying a method for doing so. The instrument then listed three specific acts that would be deemed "conclusive evidence" of revocation, implying that other statements or acts not specifically listed could also constitute evidence of revocation. The court correctly concluded that because the settlor had not specified a mode of revocation, comment *i* to *Restatement (Second) of Trusts* § 330 controlled,[2] and the settlor could exercise his power to revoke in any manner that sufficiently manifested his intention to do so.

In this case, decedent reserved the power to amend or revoke the trust agreement "by instrument in writing delivered to the Trustee...." Unlike the provision considered in *Barnette*, this provision specified one method of revocation, i.e., by instrument in writing, and no other language in the trust instrument suggested or implied that this method was nonexclusive. Under the settled law of trusts, decedent lacked power to revoke or amend the trust except in accordance with the provisions of the trust agreement.

Appellees claim to discern a trend in the law toward wholesale application of the law of wills to revocable trusts. This trend is logical and justified, appellees argue, because revocable trusts often serve as substitutes for wills and the same rules should

---

**2.** Comment *i* states:

> *Where no method of revocation specified.* If the settlor reserves a power to revoke the trust but does not specify any mode of revocation, the power can be exercised in any manner which sufficiently manifests the intention of the settlor to revoke the trust.

> Any definitive manifestation by the settlor of his intention that the trust should be forthwith revoked is sufficient....

*Restatement* § 330, comment *i*, at 138.

**212**

apply to both. As evidence of this trend, appellees cite decisions that apply statutory rules affecting lapsed bequests and post-will divorce to provisions in revocable *inter vivos* trusts. *See, e.g., Estate of Button,* 490 P.2d at 734; *Clymer v. Mayo,* 393 Mass. 754, 473 N.E.2d 1084, 1093–94 (1985); *Miller v. First Nat'l Bank & Trust Co.,* 637 P.2d 75, 77–78 (Okla.1981). These decisions, however, involve trust provisions that as a practical matter operate only after the settlor's death. In contrast, the provisions of decedent's *inter vivos* trust transferred present remainder interests to the trust beneficiaries, who are entitled to insist on full compliance with the terms of the trust instrument. We see no cogent reason the settled and predictable common law rules governing the revocation of trusts should be generally displaced by the distinct statutory rules for the revocation of wills.[3]

Because appellees presented no evidence showing that decedent complied with the required method of revocation, the *inter vivos* trust was not revoked and remained valid.

### IV.

For the foregoing reasons, we affirm the trial court's ruling that decedent revoked his will and died intestate, reverse the court's ruling that decedent revoked his trust agreement and the amendments thereto, and remand for proceedings consistent with this opinion.

GERBER, P.J., and MELVYN T. SHELLEY, Retired Judge, concur.

NOTE: MELVYN T. SHELLEY, Retired Judge was authorized to participate in this appeal by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. 6, § 20, and A.R.S. § 38–813.

---

3. Because we hold that the decedent's trust agreement could not have been revoked by physical destruction, we need not decide whether the common law presumption that a lost will last seen in the testator's possession was revoked by physical destruction may apply under some circumstances to revocable *inter vivos* trusts. We also need not decide whether Arizona's Statute of Frauds, A.R.S. § 44–101, would have required a written instrument to revoke the decedent's trust.