76 P.3d 888

**In the Matter of Walter P. HERBST and Shirley A. Herbst Trust Dated January 26, 1990.**

**Mark Martinets, Appellant,**

v.

**Henry Pinto; Katherine Martinets; Cynthia Bode; Paul Herbst; Leigh–Anne Bone; Jason Martinets; Geri Torres; Gregory Heater, Appellees.**

No. 1 CA–CV 02–0557.

Court of Appeals of Arizona, Division 1, Department E.

Sept. 25, 2003.

Law Offices of Larry W. Suciu, PLC, By Barry L. Olsen, Yuma, Attorneys for Appellant.

Law Office of Bruce A. Jensen, By Bruce A. Jensen, Yuma, Attorneys for Appellees.

## OPINION

EHRLICH, Judge.

¶ 1 Mark Martinets ("Mark") appeals from a judgment that his mother, Katherine Martinets ("Katherine"), and his uncle, Paul Herbst ("Paul"), remained beneficiaries of a trust established by their father, Walter P. Herbst ("Walter"), and stepmother, Shirley A. Herbst ("Shirley"). The trial court found that, despite Walter's intention to disinherit his children, his will, although demonstrating that intention, did not effectively amend the trust because Shirley had not signed it as required by the terms of the trust. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶ 2 On January 26, 1990, Walter and Shirley executed a Declaration of Trust ("Trust") drafted by Walter, as were all of the documents now at issue. The Trust designated Walter and Shirley as the grantors, Walter as the trustee, Shirley as the successor trustee and Katherine as contingent trustee, and provided for the disposition of the Trust property as follows:

4. Upon the death of SHIRLEY A. HERBST, or upon the death of WALTER P. HERBST if not survived by his/her spouse, the trust property shall be equally divided among and, except as hereinafter provided, held or distributed to the grantors' then living lineal or legally adopted descendants, per stirpes. The trustee shall pay the income from any retained share to or for the benefit of the beneficiary thereof during the period that such share is retained, and at the end of such

period the principal thereof shall be distributed to such beneficiary.

Amendments to the Trust were authorized by the following provision:

8. The Grantors reserve the right during their joint lives and during the life of the survivor of them to amend, modity [sic] or revoke this Declaration of Trust agreement in whole or in part, without the consent of any beneficiary and without giving notice to any beneficiary hereunder, by a writings [sic] signed and acknowledged by the Grantors or the survivor, to be effective upon delivery to either Trustee.

¶ 3 Walter and Shirley signed the Trust document, and they later jointly executed five amendments to the Trust, three of which changed the successor trustee. Henry J. Pinto was ultimately named as successor trustee.

¶ 4 On May 13, 1997, Walter executed his "Last Will and Testament" ("Will"), providing, in part, as follows:

ITEM II: I give, devise and bequeath my entire estate, whether real property or personal property, of every kind, name and description, whatsoever and wheresoever situated, which I now own or hereafter acquire, to WALTER P. HERBST, as TRUSTEE of the LIVING TRUST, to be held, managed and disposed of in accordance with the provisions of said TRUST which was established by a Declaration of Trust dated January 26, 1990, between WALTER P. HERBST and SHIRLEY A. HERBST wherein WALTER P. HERBST is designated as TRUSTEE, and which in [sic] now in existence.

* * *

IV. That upon the death of WALTER P. HERBST the following cash monies shall be paid in the specified amounts to:

a. Katherine Marie Martinets the total sum of one dollar ($1.00).

b. Paul LeRoy Herbst the total sum of one dollar ($1.00).

¶ 5 Walter died on February 27, 2000, survived by Shirley and by Katherine and Paul, two of his three children from a prior mar-

riage. A third child predeceased Walter, leaving a child, Ray Mallamace.

¶ 6 After Walter's death, Pinto sent Katherine and Paul envelopes prepared by Walter. Each envelope contained a check for $1 and the following letter written by Walter:

Enclosed you will find a check in the amount of $1.00 which represents the sum total of your inheritance as prescribed by your father's Last Will and Testament recorded as an integral part of a Revocable Living Trust established and dated January 26, 1990 under the title "Declaration of Living Trust" of Walter P. and Shirley A. Herbst. Dated: July 1, 1996. By: Walter P. Herbst, trustee and father. Winter address: 9653 So. Feldspar Ave., Yuma, Arizona 85365.

¶ 7 Shirley died less than one month after Walter. She was survived by two children from a prior marriage, Geri Torres and Gregory Heater.

¶ 8 In September 2001, Pinto filed a petition in Yuma County Superior Court, seeking a determination of the beneficiaries of the Trust. Among the questions presented to the court was whether paragraph IV of the Will, which provided for Katherine and Paul to receive only $1 each, amended the Trust to remove Katherine and Paul as beneficiaries of the Trust.[1] Pinto's position was that the Will did not serve to amend the Trust and that the beneficiaries under paragraph IV of the Trust remained Katherine, Paul, Ray Mallamace, Geri Torres and Gregory Heater.

¶ 9 Mark responded to the petition, objecting to the distribution of any part of the Trust to Katherine or Paul. He asserted that, not only did paragraph IV of the Will amend the Trust to disinherit Katherine and Paul, but that the letters sent to Katherine and Paul after Walter's death supported that position.

¶ 10 At an evidentiary hearing, Roger Lissone, a friend of Walter, testified that Walter had told him that he had intended to disinherit Katherine and Paul by leaving them $1

each. He added that Shirley had been aware of his intention, that some of these conversations had occurred in Shirley's presence and that she had "absolutely" acquiesced in Walter's plan.

¶ 11 Pinto provided similar testimony. He stated that Walter had been adamant that Pinto understand the instruction regarding delivering the letters to Katherine and Paul and that he knew that Walter's intention had been to disinherit them from the Will and the Trust. He also testified that Shirley had been present when he had discussed these instructions with Walter, that Shirley had been aware of Walter's plan to leave his children $1 each and that she had raised no objection.

¶ 12 The trial court found that, in executing the Will, Walter had intended to disinherit Katherine and Paul from both the Will and the Trust. It concluded, however, that the Will did not operate as an amendment to the Trust "if for no other reason but that Shirley Herbst did not sign it."

¶ 13 Mark appealed from the trial court's unsigned minute-entry ruling, but the ruling was not final, Ariz. R. Civ. P. ("Rule") 58(a), nor did it dispose of all issues as to all parties or include an express determination of finality pursuant to Rule 54(b). We therefore revested jurisdiction in the superior court to permit entry of an appropriate order, and Mark thereafter submitted to this court a signed order that included a Rule 54(b) determination. We now have jurisdiction pursuant to Arizona Revised Statutes section (A.R.S. § )12–2101(J)(2003).

### DISCUSSION

■ ¶ 14 The parties agree and the trial court found that Walter had intended to disinherit Katherine and Paul from both the Trust and the Will.[2] Because the facts are undisputed, we review de novo whether the court properly applied the law, and we will

---

1. A second question, not at issue, concerned a conflict between the Trust and an amendment to the Trust regarding whether the son of the child who predeceased Walter remained a beneficiary.

2. The record includes separate letters to the court from Katherine and Paul expressing the

view that their father did not intend to disinherit them. However, neither Katherine nor Paul submitted any pleadings to the court or otherwise participated in the proceedings. Neither has submitted a brief to this court.

affirm the decision if it is legally correct on any basis. *Wetherill v. Basham,* 197 Ariz. 198, 202 ¶ 9, 3 P.3d 1118, 1122 (App.2000).

¶ 15 In creating a trust, a settlor or grantor transfers interest in the trust property to the beneficiaries designated by the trust. *In re Estate & Trust of Pilafas,* 172 Ariz. 207, 210, 836 P.2d 420, 423 (App.1992). A settlor cannot modify the trust unless the right to modify has been reserved to the settlor under the terms of the trust. *See In re Marital Trust Under the John W. Murphey and Helen G. Murphey Trust,* 169 Ariz. 443, 444, 819 P.2d 1029, 1030 (App.1991)("The ability to amend or revoke the trust is governed by its express terms."); George G. Bogert & George T. Bogert, *The Law of Trusts* § 145 (5th ed.1973); 76 Am.Jur.2d Trusts § 91 (1992).

¶ 16 Section 331(1) of The Restatement (Second) of Trusts (1959)("Restatement") is in accord with this view; it states that the "settlor has power to modify the trust if and to the extent that by the terms of the trust he reserved such a power," adding in comment c that, when a settlor has reserved the power of modification but has not specified any method of modification, the settlor can employ any method that sufficiently manifests the intention to modify the trust. However, when a settlor has reserved the power to modify the trust and specifies a particular method of modification or particular circumstances by which the trust can be modified, the trust can be modified only in that manner or under those circumstances described in comment d.

¶ 17 We follow the Restatement in the absence of contrary controlling authority. *Wetherill,* 197 Ariz. at 203 ¶ 13, 3 P.3d at 1123. Moreover, we have applied an analogous Restatement provision governing the revocation of trusts, Restatement § 330, and concluded that a settlor can revoke an *inter vivos* trust only in the manner specified by the trust. *Pilafas,* 172 Ariz. at 211, 836 P.2d at 424.

¶ 18 Walter and Shirley reserved the power to amend the Trust and specified the manner in which that power could be exercised. According to the terms of the Declaration of Trust, the power to amend was reserved "during their joint lives and during the life of the survivor of them" and had to be exercised "by a writings [sic] signed and acknowledged by the Grantors or the survivor" and delivered to "either Trustee." Thus, by the express terms of the Trust, any amendment to the Trust until the time of Walter's death required the signature of both grantors—in other words, of both Walter and Shirley. Since there is no dispute that Shirley did not sign Walter's will, the provisions in the Will that purport to disinherit Katherine and Paul from the Trust did not comply with the express provisions established by Walter for amending the Trust and therefore could not act as an amendment.[3]

¶ 19 Mark does not claim that the Trust could be amended without Shirley's signature. He argues that Walter's clear intention should not be thwarted because of the failure to follow the amendment provision and that we should interpret the Will liberally to effect Walter's purpose. He stresses that Shirley acquiesced in Walter's plan to disinherit his children, having no reason to object because Walter's plan involved only his children.

¶ 20 A will should be construed to effectuate the intent of the testator. *Doss v. Kalas,* 94 Ariz. 247, 252, 383 P.2d 169, 172 (1963). However, an *inter vivos* trust is a separate device governed by its own terms. Mark provides no legal basis for this court to disregard the express provisions in the Trust document. While he asks why Walter would require Shirley's consent to disinherit his children, whatever the reason, Walter himself drafted the Trust to require such consent as evidenced by a signed writing. He was and we are bound by those terms.

¶ 21 Mark suggests also that, because Shirley's consent was not necessary for Wal-

---

3. The purported amendment did not comply with the amendment provision for another reason. The Trust specified that it could be amended during the lifetime of the grantors; however, it could not be effectively amended by a will, which does not become an operative document until death. *See In re Kovalyshyn's Estate,* 136 N.J.Super. 40, 343 A.2d 852, 856–57 (1975). *See also* 76 Am.Jur.2d *Trusts* § 91 (1992).

ter to devise his property to the Trust, it should not be necessary to amend the Trust to disinherit Katherine and Paul. The nature of the acts, however, are significantly different. In adding his property to the Trust, Walter did not amend the terms governing the Trust but only added to the Trust corpus. The addition of property to the Trust did not adversely affect the interests of anyone else involved. The purported amendment by the Will, on the other hand, would significantly alter the terms of the Trust by changing the beneficiaries. Furthermore, the beneficiaries have an interest in the Trust and are entitled to compliance with its terms to protect that interest. *Pilafas,* 172 Ariz. at 212, 836 P.2d at 425.

¶ 22 While the evidence supports the conclusion that Walter intended to disinherit Katherine and Paul from the Trust and the Will, the record also demonstrates that Walter was aware of the method required to amend the Trust, given that he and Shirley successfully amended the Trust several times. Walter's will did not comply with the express provisions in the Trust as drafted by Walter and so did not constitute a valid amendment.

### CONCLUSION

¶ 23 The judgment is affirmed.

CONCURRING: PATRICK IRVINE, Presiding Judge, and JAMES E. CHAVEZ, Judge Pro Tempore.*