IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| KAZ CONSTRUCTION, INC., | ) | 2 CA-CV 2011-0108 |
| Plaintiff/Appellee, | ) | DEPARTMENT A |
| v. | ) | O P I N I O N |
| NEWPORT EQUITY PARTNERS;<br>SIERRA COBRE ESTATES, L.L.C.;<br>STEVEN ZANDERHOLM, | ) | |
| Defendants/Appellees, | ) | |
| and | ) | |
| ROBERT I. STROHBACH and LISA<br>A. STROHBACH, husband and wife, | ) | |
| Defendants/Appellants. | ) | |
| _____ | ) | |
| ROBERT I. STROHBACH and<br>LISA A. STROHBACH, husband and<br>wife, | ) | |
| Counterclaimants/Appellants, | ) | |
| v. | ) | |
| KAZ CONSTRUCTION, INC., | ) | |
| Counterdefendant/Appellee. | ) | |
| _____ | ) | |
| ROBERT I. STROHBACH and LISA<br>A. STROHBACH, husband and wife, | ) | |
| Cross-Claimants/Appellants, | ) | |

|   | ) |
|---|---|
| v. | ) |
|   | ) |
| NEWPORT EQUITY PARTNERS; | ) |
| SIERRA COBRE ESTATES, L.L.C.; | ) |
| and STEVEN ZANDERHOLM, | ) |
|   | ) |
| Cross-Defendants/Appellees. | ) |
|   | ) |

APPEAL FROM THE SUPERIOR COURT OF COCHISE COUNTY

Cause No. CV200801123

Honorable James L. Conlogue, Judge

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

Pak & Moring PLC
  By Thomas S. Moring and S. Gregory Jones                                    Scottsdale
Attorneys for Plaintiff/Appellee/
Counterdefendant KAZ Construction, Inc.

Baird, Williams & Greer, LLP
  By Craig M. LaChance                                                        Phoenix
Attorneys for Appellees/Defendants/
Cross-Defendants Newport Equity Partners
and Steven Zanderholm

Gust Rosenfeld, P.L.C.
  By Robert M. Savage and Mark L. Collins                                     Tucson
Attorneys for Appellants/Defendants/
Counterclaimants/Cross-Claimants
Robert I. and Lisa A. Strohbach

B R A M M E R, Judge.

2

¶1 Appellants Robert and Lisa Strohbach appeal from the trial court's grant of summary judgment in favor of appellee KAZ Construction, Inc. (KAZ). The court found invalid the Strohbachs' deed of trust on property securing a nearly $2,000,000 debt, and further concluded KAZ had a valid first-position mechanic's lien on that property. The Strohbachs argue the court erred in finding appellee Steven Zanderholm did not have an ownership interest in the property, rendering the deed of trust he executed in their favor invalid. They also argue KAZ's mechanic's lien is invalid because they had not been provided the statutorily required preliminary twenty-day notice. We affirm in part, reverse in part, and remand for further proceedings.

## Factual and Procedural Background

¶2 We view the facts in the light most favorable to the party against whom summary judgment was entered, drawing all justifiable inferences in its favor. *Modular Mining Sys., Inc. v. Jigsaw Techs., Inc.*, 221 Ariz. 515, ¶ 2, 212 P.3d 853, 855 (App. 2009). At the center of this action is property described generally as lots 1-56 of the Sierra Cobre Estates located in Cochise County. In December 2006, Zanderholm created the Title Security Agency of Arizona (TSA) Trust Number 1025 (Trust 1025), conveying the subject property to TSA as trustee for the purpose of holding title, selling, conveying, receiving payment for, or otherwise dealing with the property. The trust agreement identified Zanderholm as the beneficiary and TSA as the trustee. Under the trust agreement, Zanderholm had the authority to instruct TSA regarding the property and TSA

3

"w[ould] deal with [the property] only on [his] written direction." Zanderholm retained the right to receive profits from the sale of completed lots on the property.

¶3 In September 2007, the Strohbachs loaned Zanderholm $1.98 million, evidenced by a promissory note, to finance development of the property. Zanderholm executed a deed of trust to secure repayment of the loan, naming the Strohbachs as beneficiaries. TSA was not a party to either the note or deed of trust given the Strohbachs. The Strohbachs' deed of trust was recorded in October 2007.

¶4 In November 2007, KAZ submitted a proposal to Zanderholm to perform site work on the property. Zanderholm accepted and signed the proposal on behalf of appellee Newport Equity Partners, LLC (Newport). TSA did not sign the proposal. In February 2008, KAZ sent Trust 1025 and Newport a preliminary twenty-day notice pursuant to A.R.S. § 33-992.01. No notice was given to the Strohbachs. In June 2008, KAZ recorded a notice and claim of lien against the property.

¶5 KAZ then filed a complaint against Newport and appellee Sierra Cobre Estates, LLC (Sierra), to foreclose its lien. KAZ later amended the complaint to add the Strohbachs, Zanderholm, and TSA as defendants. The Strohbachs filed a counterclaim and cross-claim to declare their deed of trust a valid, first-position lien on the property, having priority over KAZ's lien. The Strohbachs filed a motion for summary judgment to establish the validity and priority of their deed of trust and to declare the KAZ lien invalid as to them. Sierra, Newport, and Zanderholm responded and urged the trial court to deny the Strohbachs' motion for summary judgment. KAZ filed a cross-motion for summary

4

judgment asserting the Strohbachs' deed of trust was invalid because it had been executed by Zanderholm rather than TSA. The court granted summary judgment in favor of KAZ, declaring the Strohbachs' deed of trust invalid and that KAZ had a valid first-position lien on the property. This appeal followed.

## Discussion

**¶6** Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1). A trial court should grant a motion for summary judgment "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). "On appeal from a summary judgment, we must determine de novo whether there are any genuine issues of material fact and whether the trial court erred in applying the law." *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, ¶ 8, 965 P.2d 47, 50 (App. 1998).

**Validity of Strohbachs' Deed of Trust**

**¶7** The Strohbachs argue Zanderholm had the right to execute the deed of trust in their favor and thereby encumber the property because a trust beneficiary may "freely encumber or alienate any or all of his interest in the trust res." *Dunlap Investors Ltd. v. Hogan*, 133 Ariz. 130, 132, 650 P.2d 432, 434 (1982). Notwithstanding this principle, the trial court concluded the terms of the trust here limited Zanderholm's interest and

authority. The Strohbachs have provided no legal authority to support their implication that a trust's terms cannot limit a beneficiary's powers. To the contrary, the cases upon which they rely recognize a trust must be interpreted according to its terms. *E.g.*, *Lane Title & Trust Co. v. Brannan*, 103 Ariz. 272, 277-78, 440 P.2d 105, 110-11 (1968) (trust "governed by the provisions of the instrument which creates it or general trust law"); *Dunlap*, 133 Ariz. at 132, 650 P.2d at 434 (beneficiary has vested interest in property itself absent agreement to the contrary); *cf. In re Estate & Trust of Pilafas*, 172 Ariz. 207, 210, 836 P.2d 420, 423 (App. 1992) (terms of trust limit powers of settlor even where settlor named as trustee for benefit of himself and others).

¶8         Trust 1025 was created to allow TSA to hold, sell, convey, and otherwise handle the property as directed by Zanderholm. The trust provided "the whole equitable and legal title to the said property shall be vested in the Trustee and no equitable and legal interest in and to said property shall be vested in the Beneficiary." However, the deed of trust Zanderholm gave the Strohbachs purported to grant the entire property with power of sale and warranted Zanderholm had a free and unencumbered "good and marketable title in fee simple to the real property." *See* A.R.S. § 33-435 (if "grant" used in fee simple conveyance, grantor covenants he has not conveyed same estate, right, title, or interest therein to another and estate unencumbered). Although there may be some dispute as to the extent and nature of Zanderholm's equitable interest in the property under the trust,

6

because he retained a right to control the property,[1] it is undisputed that TSA was the legal title owner of the property.

¶9    The terms of the trust resolve any potential ambiguity regarding Zanderholm's power to encumber the property.[2] *See* Restatement (Third) of Trusts § 49 & cmt. a; § 51 cmt. d (2003) (extent of trust beneficiary interest depends upon intention manifested by settlor in terms of trust; terms of trust may require notice to or consent of trustee as condition of transfer); *In re Herbst*, 206 Ariz. 214, ¶ 17, 76 P.3d 888, 891 (App. 2003) (we follow Restatement in absence of contrary controlling authority); *cf. Dunlap*, 133 Ariz. at 132, 650 P.2d at 434 ("[a]bsent an agreement to the contrary" in trust document, beneficiary retains power of encumbrance and alienation of res).  The trust provides "[a]ll instruments affecting any property included in th[e] Trust shall be executed solely by [TSA]."  The Strohbachs argue Zanderholm retained the power to

---

[1]Although generally under a trust a legal estate is separated from the equitable estate, in some land trusts the trustee holds both legal and equitable title. 76 Am. Jur. 2d *Trusts* § 253 (2011).  Although the Strohbachs acknowledge the trust language limited Zanderholm's interest to a mere contractual right, they argue the beneficiary of a trust by definition must retain an equitable interest in the trust.  Because the issue in this case is not whether Zanderholm retained any equitable interest in the trust res, but whether he had the power to execute the deed of trust to the Strohbachs, we need not address this argument.

[2]Although TSA and the Strohbachs stipulated in the trial court that Zanderholm had the authority to encumber the property, one of the trust parties cannot revise explicit language in the trust by unilaterally disavowing it after the questioned documents have been created.  *See In re Estate of Zilles*, 219 Ariz. 527, ¶ 11, 200 P.3d 1024, 1028 (App. 2008) (relevant intent is that of trustor at time of creation of trust); *see also Taylor v. Hutchinson*, 17 Ariz. App. 301, 304, 497 P.2d 527, 530 (1972) (when intent plainly expressed, court will not go outside terms of instrument to interpret).

execute instruments because the trust also provides that TSA, "in its discretion, may refrain from executing any such instrument and, at its option, may cause or permit such instrument to be executed by some other person." They argue this qualification should be interpreted to mean "'some other person,' including Zanderholm, could execute instruments affecting the [property]." The plain language of this provision does not support the Strohbachs' interpretation that Zanderholm was intended to possess such authority without permission or direction from TSA, especially when viewed in light of additional trust terms. *See Lane Title & Trust Co.*, 103 Ariz. at 277-78, 440 P.2d at 110-11.

¶10        First, the trust provides that Zanderholm may direct TSA "to convey . . . to [him], the legal title to any portion of the Trust property for purposes of allowing the recordation of an encumbrance covering said portion as security for any loan on said property." It further requires such conveyance "be accomplished by the consecutive recordation by the Trustee . . . of a deed from the Trustee to the Beneficiary, a mortgage or deed of trust wherein the grantee is the mortgagor or trustor, and a deed from the mortgagor/trustor to the Trustee." This clear language is evidence Zanderholm had no authority to encumber the property unless TSA first conveyed to him legal title.

¶11        Similarly, the recorded assurance agreement executed by TSA, Zanderholm, and the city of Bisbee shortly after the trust was created provides additional evidence of the requirements of the trust, as understood by TSA and Zanderholm. It includes a procedure by which TSA may convey the property to Zanderholm "to create security for

8

additional loans for the purchase or improvement of [the property]," in which case "the property shall immediately thereafter be reconveyed to the Trustee." The assurance agreement further states that such procedure "shall be deemed to be a condition on and restriction on the rights and interests of any third party whose interest in the property arises after the date of this Agreement." Clearly, Zanderholm contemplated that he might need to secure additional funds to improve the property and developed in advance a procedure to use the property to do so. However, when that precise need arose, Zanderholm bypassed the specified procedure and attempted to convey an interest in the property directly, in violation of the trust's terms.

¶12        Importantly, the assurance agreement and the initial conveyance to TSA were of record when the Strohbachs loaned Zanderholm the funds to develop the property. Therefore, the Strohbachs had constructive notice of those documents and should have been aware of the procedure necessary to encumber the property.[3] *See* A.R.S. § 33-416. Last, and even more telling, is that nothing in the record suggests that TSA ever "cause[d] or permit[ted]" Zanderholm to execute any document to encumber the property to secure the loan from the Strohbachs.

---

[3]The harshness of this result could have been avoided had the Strohbachs, having constructive notice of both the deed to the property showing title in TSA and the assurance agreement with Bisbee, undertaken before making this sizeable loan some diligence in determining the extent of Zanderholm's interest in, and ability to convey or encumber, the property, including an examination of the terms of the unrecorded trust agreement. Nothing in the record suggests they made any such inquiries, nor that a routine title search was sought or a standard policy of title insurance issued.

**¶13** Because Zanderholm's ability to encumber the property was severely restricted by the trust's terms, and because TSA never authorized Zanderholm to execute the deed of trust to the Strohbachs, the trial court did not err in determining the Strohbachs were conveyed no interest in the property by the deed of trust Zanderholm executed.

**Validity of KAZ's Mechanic's Lien**

**¶14** The Strohbachs argue KAZ's mechanic's lien was invalid because KAZ failed to provide them, as, at minimum, a reputed construction lender, with a copy of its preliminary twenty-day notice pursuant to A.R.S. § 33-992.01(B). We interpret statutes de novo. *Green v. Lisa Frank, Inc.*, 221 Ariz. 138, ¶ 48, 211 P.3d 16, 33 (App. 2009).

**¶15** Section 33-992.01 provides in relevant part:

> A. For the purposes of this section:
>
> 1. "Construction lender" means any mortgagee or beneficiary under a deed of trust lending funds all or a portion of which are used to defray the cost of the construction, alteration, repair or improvement . . . .
>
>  . . . .
>
> B. . . . [a mechanic's lien claimant] shall, as a necessary prerequisite to the validity of any claim of lien, serve the owner or reputed owner, the original contractor or reputed contractor, the construction lender, if any, or reputed construction lender, if any, . . . with a written preliminary twenty day notice as prescribed by this section.

The Strohbachs contend they were a "construction lender" or "reputed construction lender" entitled to notice under the statute. Although the Strohbachs have failed to prove they

10

were the beneficiaries of a valid deed of trust on the property, this does not end our inquiry. The Strohbachs had recorded a "construction deed of trust," accurately describing the subject property and showing them as its beneficiary, months before KAZ began its twenty-day notice procedure. The deed of trust stated the Strohbachs had made a loan for the purpose of constructing improvements on the property. And, although the term "reputed construction lender" is not defined by statute or case law, that language would serve no purpose if it had no different meaning than "construction lender." *See City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, ¶ 33, 181 P.3d 219, 230 (App. 2008) (we avoid interpretation that makes statutory language superfluous). We therefore cannot agree with the trial court that "a claimant's lien rights should not be defeated for failure to serve a reputed construction lender that turns out not to be the actual [construction] lender."

¶16        The apparent policy reason underpinning § 33-992.01 is to provide notice to those parties reasonably construed as having a reputed interest in the property so they might protect their respective interests. *See* § 33-992.01(A); *see also Delmastro & Eells v. Taco Bell Corp.*, 228 Ariz. 134, ¶ 13, 263 P.3d 683, 688 (App. 2011) (purpose of notice statute to allow meaningful communication among owner, lender, and general contractor to ensure payment of potential lien claimants). According to the terms of the deed of trust, Zanderholm and the Strohbachs agreed the loan was made to fund improvements on the property, and KAZ had constructive notice of this intent. *See* A.R.S. § 33-818 (recorded trust deed provides notice of content to all persons); *see also Watson Constr. Co. v. Amfac*

11

*Mortg. Corp.*, 124 Ariz. 570, 575-76, 606 P.2d 421, 426-27 (App. 1979) (recorded deed of trust containing names of parties, nature of transaction, and property description not defective for constructive notice purposes; adequate to apprise third parties of nature and substance of rights claimed under it). Therefore, as to the Strohbachs, KAZ's mechanic's lien is invalid, and the trial court erred in concluding otherwise. § 33-992.01(B); *see also Delmastro & Eells*, 228 Ariz. 134, ¶ 9, 263 P.3d at 687 (because mechanic's liens created by statute, claimant must comply strictly with statutory requirements).[4]

**Disposition**

¶17        For the foregoing reasons, we affirm the trial court's decision in part and reverse it in part. We remand for further proceedings consistent with this decision.

/s/ *J. William Brammer, Jr.*
J. WILLIAM BRAMMER, JR., Judge

CONCURRING:

/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Presiding Judge

/s/ *Joseph W. Howard*
JOSEPH W. HOWARD, Chief Judge

---

[4]The harshness of this result also could have been avoided by the simple provision by KAZ to the Strohbachs of a copy of the preliminary twenty-day notice. The Strohbachs were shown of record as the beneficiary of a construction deed of trust, executed by the same person with whom KAZ had dealt and contracted for construction. It was not for KAZ to make the legal determination of the bona fides of the Strohbachs' construction deed of trust, but rather, to protect its lien rights by giving the statutorily-required notice to those contemplated by the statute.