3 P.3d 1118

Gwendolyn Renee WETHERILL,
a married woman in her own
right, Plaintiff/Appellant,

v.

Robin L. BASHAM and Joe Basham,
husband and wife; William Wissler,
Defendants/Appellees.

No. 2 CA–CV 98–0230.

Court of Appeals of Arizona,
Division 2, Department A.

Jan. 25, 2000.

***

Durazzo & Eckel, P.C. By Patric E. Durazzo, Tucson, for Plaintiff/Appellant.

Chandler, Tullar, Udall & Redhair, L.L.P. By John J. Brady and Charles A. Davis, Tucson, for Defendant/Appellee Wissler.

Clifford G. Bleich Law Office By Marianne Poston, Tucson, for Defendants/Appellees Basham.

## OPINION

PELANDER, Presiding Judge.

¶1 In this case involving disposition of assets in a family trust, plaintiff/appellant Gwendolyn Renee Wetherill appeals from the trial court's order granting summary judgment in favor of defendants/appellees. In affirming that order, we hold that a co-settlor's amendment to the trust, though ineffective as such, nonetheless served as an effective, though inadvertent, exercise of a power of appointment under the trust so as to change the sole remainder beneficiary. We also hold that the attorney who represented the co-settlor in preparing the amendment owed no duty to Wetherill, the disinherited beneficiary, with whom he had no attorney-client relationship and whose interest was directly adverse to his client's.

## BACKGROUND

¶2 The pertinent facts are straightforward and undisputed. In 1976, Edward and Renee Kerns, husband and wife, created a family trust. The trust named the Kerns' only child, Wetherill, as sole remainder beneficiary. Edward was named as the trustee, and both he and Renee were named as joint settlors of the trust.

¶ 3 When Edward became legally incapacitated in 1992 because of Alzheimer's disease, Renee was appointed as his guardian and conservator. Renee retained defendant/appellee William Wissler, an attorney, in December 1993. Under his counsel, in early 1994, Renee appointed herself successor trustee and amended the trust for the sole purpose of removing Wetherill as remainder beneficiary and successor trustee and replacing her in those capacities with defendant/appellee Robin Basham, one of Wetherill's children. The amendment stated, inter alia:

> The purpose of this ... Amendment is to substitute ROBIN L. BASHAM in place of [Wetherill]. More specifically, the Settlors, by this ... Amendment, intend to eliminate all reference whatsoever to [Wetherill] and preclude her from being a Beneficiary, Successor Beneficiary, Trustee, Successor Trustee or Alternate Trustee in any way, shape or form whatsoever. It is the intent of the Settlors that one of their granddaughters, ROBIN L. BASHAM, be substituted in place of [Wetherill] and in the event ROBIN L. BASHAM should be predeceased then another of the Settlors' granddaughters, PAMELA G. MURPHY, should succeed in place of ROBIN L. BASHAM.

Renee signed that amendment not only as settlor and successor trustee, but also on Edward's behalf as his guardian and conservator. Wissler prepared the amendment and notarized Renee's signatures on it.

¶ 4 Edward died in November 1995. Upon his death, pursuant to its terms, the family trust split into two newly created trusts: the decedent's trust, which was irrevocable, and the survivor's trust, which was not. Essentially, one-half of the Kerns' community property and Renee's interest in any life insurance proceeds received by reason of Edward's death were transferred into the survivor's trust, and the remaining community property and all other assets were transferred into the decedent's trust.

¶ 5 Renee died in December 1995, less than one month after Edward's death. Pursuant to the residuary clause in her will, all her separate property and her one-half share of community property were transferred to the trust, "as amended." The trust required the trustee, upon the survivor's death, to give the assets of the survivor's trust to "such person or persons, or to the estate of the Survivor, upon such terms, conditions and limitations as the Survivor appoints by the last unrevoked written instrument, other than a Will, executed by the Survivor and delivered to the Trustee." Based on the amendment that Renee had executed in 1994, Basham took possession and control of all trust assets in both the survivor's and decedent's trusts, prompting this action by Wetherill.

¶ 6 In her complaint, Wetherill claimed entitlement to all trust assets. She alleged, inter alia, breach of fiduciary duty and unjust enrichment against Basham and breach of fiduciary duty against Wissler. On the parties' cross-motions for summary judgment, the trial court entered summary judgment in favor of Basham and Wissler and denied Wetherill's motions. This appeal followed.

## DISCUSSION

### I. Claims Against Basham

¶ 7 The family trust contained a provision relating to its amendment and revocation, which stated:

> The Settlors together may amend, alter, revoke or terminate this Agreement, or any provision of this Agreement in whole or in part, by an instrument in writing signed by them and delivered to the Trustee.

> Upon the death of the first Settlor to die ("Decedent"), the Decedent's Trust shall be irrevocable; the surviving Settlor ("Survivor"), may amend, alter, revoke or terminate the Survivor's Trust by an instrument in writing signed by the Survivor and delivered to the Trustee in the lifetime of the Survivor.

Citing A.R.S. § 14–5424, *In re Estate and Trust of Pilafas*, 172 Ariz. 207, 836 P.2d 420 (App.1992), and *In re Marital Trust*, 169 Ariz. 443, 819 P.2d 1029 (App.1991), the trial court concluded that Renee's 1994 amendment replacing Wetherill with Basham as remainder beneficiary was "not an effective

amendment to the Trust."[1] The court reasoned that "the power to amend was reserved personally to Mr. Kerns," and a conservator's powers under § 14–5424 "do not include the power to alter or amend testamentary instruments of trust."

¶ 8 The trial court also ruled, however, that the following provision in the trust granted a special power of appointment (POA) to Renee, as survivor, with respect to the decedent's trust:

Powers of Appointment. During the Survivor's lifetime, or upon the death of the Survivor, so much of the principal of the trust estate shall be paid over to or for the benefit of Settlors' descendants, either outright or in trust, upon such conditions, and in amounts and at such times, as the Survivor may direct and appoint by written instrument delivered to the Trustee. In no event is the power of appointment conferred by this paragraph to be exercised by the Survivor in favor of the Survivor, his or her estate, his or her creditors, or the creditors of his or her estate.

That paragraph (the POA provision) was contained in article IX of the family trust, relating to administration of the decedent's trust. Based on the POA provision and comment a to the Restatement (Second) of Property (Donative Transfers) § 18.4 (1986) (Restatement), the trial court concluded that "the attempted amendment to the trust agreement by Renee Kerns [was] a valid exercise of her special power of appointment over the Decedent's Trust."[2]

¶ 9 The parties have framed the issue relating to that ruling, which Wetherill challenges on several grounds, as follows: Whether Renee's amendment to the trust, though ineffective as an amendment, was a valid exercise of the trust's special POA after

Edward's death so as to change the remainder beneficiary, the same purpose for which Renee had executed the amendment. Because the facts are undisputed, we determine de novo whether the trial court correctly applied the substantive law to those facts.*Carden v. Golden Eagle Ins. Co.*, 190 Ariz. 295, 296, 947 P.2d 869, 870 (App.1997). We will affirm the trial court's ruling if it is legally correct on any ground. *Hale v. Amphitheater School Dist. No. 10*, 192 Ariz. 111, ¶ 5, 961 P.2d 1059, ¶ 5 (App.1998).

¶ 10 Wetherill contends the trial court erred in deeming the amendment sufficient to constitute a valid exercise of the special POA that applied to the decedent's trust. To support that argument, Wetherill relies on Restatement § 18.4, which provides: "A power of appointment is not effectively exercised by an otherwise legally effective instrument of appointment that undertakes to exercise the power before the power is created or before a condition precedent to the power's exercise has been satisfied." Based on that section and the trust's POA provision, Wetherill contends Renee's ineffective amendment in 1994 could not effectively exercise the POA because (1) the amendment itself was not a "legally effective instrument," as the trial court ruled; (2) Renee executed the amendment before the decedent's trust was created when Edward died and, thus, before the POA was created; and (3) a condition precedent to exercise of the POA—the death of one of the two settlors, leaving a survivor—had not been fulfilled when Renee executed the amendment.

¶ 11 Wetherill's argument has several flaws. First, although the trial court determined that Renee's 1994 amendment was not

1. Only Wissler challenges that ruling on appeal, contending that Renee had authority as her husband's conservator to alter the terms of their trust by amendment. The only case on which Wissler relies, *In re Estate of Krokowsky*, 180 Ariz. 190, 883 P.2d 427 (App.1993), was vacated. *In re Estate of Krokowsky*, 182 Ariz. 277, 896 P.2d 247 (1995). *See Stephenson v. Nastro*, 192 Ariz. 475, 480, 967 P.2d 616, 621 (App.1998) (vacated cases have no precedential value). In any event, we do not address this issue in view of our disposition of the case on other grounds.

2. The trial court also ruled that Renee's 1994 amendment was "sufficient to effect an amendment to the Survivor's Trust whereby the Plaintiff Gwendolyn Wetherill is removed as beneficiary of the Survivor's Trust." As clarified at oral argument, Wetherill does not challenge that ruling on appeal, but rather now only seeks all assets of the decedent's trust. Consequently, the assets of the survivor's trust passed to Basham, pursuant to the trust provisions relating to administration of the survivor's trust.

"effective" to amend the trust, the court did not find the amendment totally "void" or "invalid" for all purposes, as Wetherill suggests. The only case Wetherill cites for the proposition that the amendment "should be regarded as void" with "no legal force or binding effect" is totally inapposite. *Chicago Title Ins. Co. v. Renaissance Homes, Ltd.*, 139 Ariz. 494, 679 P.2d 517 (App.1983) (addressing the state's statutory authority to amend real estate agreement with competitive bidder). That the 1994 amendment was ineffective to amend the trust did not necessarily render it void for all purposes.

¶ 12 Second, Wetherill apparently confuses and incorrectly equates the creation of the POA with its exercisability. A POA is created when one person (the donor) grants another person (the donee) authority to designate beneficiaries of the donor's property. Restatement §§ 11.1, 11.2. *See also In re Estate of Krokowsky*, 182 Ariz. 277, 280, 896 P.2d 247, 250 (1995). A POA is general if the donee may exercise it in favor of anyone he or she chooses and specific if the donee may exercise it only in favor of a particular person or class of persons. *Id.*; *In re Rowlands' Estate*, 73 Ariz. 337, 341, 241 P.2d 781, 784 (1952); Restatement § 11.4. Whether general or specific, a POA "is not presently exercisable if it[,] ... at the time in question, is not exercisable until the occurrence of some event." Restatement § 11.5(2). Thus,

A power of appointment must come into existence before the issue of whether it is presently exercisable or not presently exercisable can be determined.... A power of appointment set forth in a document that is presently legally operative, as is the case of the powers of appointment described in [a] revocable trust ..., [is] in existence during [the donor's] lifetime, even though [it] may not become exercisable until the occurrence of some event which may never occur.

Restatement § 11.5 cmt. a.

¶ 13 In the absence of controlling statutory or case authority, Arizona courts generally follow the Restatement of the Law if its view "is logical, furthers the interests of justice, is consistent with Arizona law and policy, and has been generally acknowledged

elsewhere." *Ramirez v. Health Partners of Southern Arizona*, 193 Ariz. 325, ¶ 26, 972 P.2d 658, ¶ 26 (App.1998). *See also Pilafas*, 172 Ariz. at 210, 836 P.2d at 423; *cf.* A.R.S. § 14–2902(A) (with certain exceptions, "the time of creation of ... a power of appointment is determined under general principles of property law"). Under the Restatement, the POA over the decedent's trust was "created," or "came into existence," when Edward and Renee created the trust in 1976. The illustration in Restatement § 11.5, as explained in comment a to that section, supports that conclusion. That the POA was not exercisable until one of them died, leaving a survivor which gave rise to the decedent's trust, does not alter that fact. Thus, Renee's 1994 amendment did not "undertake[ ] to exercise the [POA] before the power [was] created." Restatement § 18.4. The POA became exercisable when Edward died in 1995 and Renee survived him.

¶ 14 Third, we agree with Basham and Wissler that Renee's survival was the only condition precedent to her effective exercise of the POA. As Basham correctly notes, although Renee executed the amendment before Edward's death and, thus, before the POA became exercisable, the amendment "ripen[ed] into [a] valid exercise[ ]" of the POA after Edward died because Renee never revoked it. Under Restatement § 18.4, although Renee's 1994 amendment could not "effectively exercise[ ]" the POA unless and until Edward died and she survived him, that condition precedent had occurred when the POA became exercisable, as the trial court correctly ruled.

¶ 15 Contrary to Wetherill's argument, the trial court did not "ignore[ ]" Restatement § 18.4. Nor does the trial court's ruling conflict with that section. And, comment a to § 18.4, which the trial court cited and upon which Basham and Wissler rely, supports the ruling. That comment sets forth the rationale for § 18.4, stating, in pertinent part:

Where a person declares in some form of language that his or her property shall pass to persons selected by another, the power becomes exercisable when the instrument creating the power becomes effective and there is no condition precedent

to its exercise that has not been satisfied. Until that time there is no appointment that can be made. An attempted exercise of a nonexistent power or a nonexercisable power cannot produce an appointment....

. . . .

The donor may use a revocable inter vivos trust instead of a will to create a power in a person other than the donor. During the lifetime of the donor the revocable trust, unlike a will, is a legally operative document. It is to be inferred, though, that the donor does not intend the donee, in the case of the revocable trust, to be able to make an effective exercise of the power during the time the donor is alive and can revoke the trust. Though the power is created, it is not exercisable until the donor is out of the picture unless the donor provides otherwise. Consequently, an attempted exercise of a nonexercisable power does not produce an exercise.... [I]f the donee purports to exercise the nonexercisable power and the donee survives to the time the power becomes exercisable without revoking the prior attempted exercise, the prior action constitutes an exercise of the power as of the time the power becomes exercisable.

¶ 16 Although Wetherill seeks to trivialize this comment, we find it consistent with our earlier discussion in ¶ 13 and support for the trial court's ruling. Because the POA was established by a revocable, inter vivos trust,[3] the POA "[was] created" before Edward's death, although it was "not exercisable until [Edward was] out of the picture." Restatement § 18.4 cmt. a. Moreover, Renee's execution of the amendment in 1994 not only was allegedly ineffective to amend the trust, as the trial court concluded, but also did "not produce an exercise" of the POA at that time. *Id.* But Renee's amendment "constitute[d] an exercise of the [POA] as of the time the power [became] exercisable" after Edward's death, because Renee survived him

and did not revoke the prior amendment. *Id.*

■ ¶ 17 Relying on *In re Strobel,* 149 Ariz. 213, 717 P.2d 892 (1986), Wetherill next asserts that Renee's 1994 amendment did not effectively exercise the POA because the amendment failed to "comply perfectly with the requirements of the donative instrument," the Kerns' trust. Thus, Wetherill argues, the POA "should not be rescued in equity" because it "was not intended or correctly executed." We find no merit to this argument for two reasons.

¶ 18 First, the "central issue" in *Strobel* was "whether a court of equity can give effect to a defective exercise of a power of appointment" and, if so, under what circumstances. *Id.* at 217, 717 P.2d at 896. In contrast, although Basham asked it to do so, the trial court did not invoke its equitable powers to "rescue" Renee's exercise of the POA. Rather, as noted above, the trial court adopted and applied the Restatement's legal principles in concluding that Renee's attempted, but ineffective, amendment to the trust was "a valid exercise of her special [POA] over the Decedent's Trust."

■ ¶ 19 Second, even if *Strobel* were applicable here, it does not undermine the trial court's ruling. The court in *Strobel* concluded that, if an appointment fails to satisfy formal requirements imposed by the donor, equity will cure the defective exercise of the POA when " 'the appointment approximates the manner of appointment prescribed by the donor' "; *id., quoting* Restatement of Property § 347(a) (1940); the appointed, "named beneficiary is a natural object of the donee's affection"; *Strobel,* 149 Ariz. at 218, 717 P.2d at 897; "the donee intended to exercise the power," *id.* at 217, 717 P.2d at 896, and such intent is "evident from the document itself"; *id.* at 218, 717 P.2d at 897; and the donee's intent to exercise the POA does not conflict with the donor's contrary intent. *Id.*

---

3. The family trust was revocable because it provided that the settlors "together may amend, alter, revoke or terminate [the trust] Agreement, or any provision of this Agreement, in whole or in part, by an instrument in writing signed by them and delivered to the Trustee." The trust was inter vivos because it was "created and [took] effect during the settlor[s'] lifetime." *Black's Law Dictionary* 1516 (7th ed.1999). A testamentary trust, in contrast, "is created by a will and takes effect when the settlor (testator) dies." *Id.* at 1518.

¶ 20 Although this case presents close issues on some of those elements, we find the *Strobel* requirements were met here. The POA provision in the Kerns' trust imposed minimal requirements for exercise of the POA. That provision permitted "the Survivor" to "direct and appoint by written instrument delivered to the Trustee" how and to whom "so much of the principal of the trust estate shall be paid over to or for the benefit of Settlors' descendants." Renee's 1994 amendment met those criteria and approximated the manner of appointment prescribed in the POA provision. *See Strobel*, 149 Ariz. at 218, 717 P.2d at 897 (to determine whether the "attempted exercise approximated the required formality," court evaluates "(1) precisely what formality was required, (2) the donor's substantial purpose in imposing that formality, and finally (3) whether the defects in the attempted exercise would defeat that substantial purpose"). That the amendment did not use the words "direct and appoint" and that Renee did not "deliver[ ]" the amendment to herself, as trustee, do not alter our conclusion. And, although the identity of the surviving settlor of the trust obviously could not be determined until one of the settlors died, the POA provision did not require the survivor to execute the "written instrument" only after the death of the first settlor in order to effectively exercise the POA.

¶ 21 Renee's 1994 amendment, as Wetherill correctly notes, did not mention the POA or the POA provision. But the trust did not require the "written instrument" to do so. *Cf. In re Estate of Cox*, 8 Cal.App.3d 168, 87 Cal.Rptr. 55, 72 (1970) ("It is not necessary that the will refer to a power of appointment in order to exercise such power, in the absence of any such requirement in the instrument creating the power."). If the trust had expressly required that the POA "be exercised by a reference, an express reference or a specific reference to the power or its source," the law would "presume that the donor's intention was to prevent an inadvertent exercise of the power." A.R.S. § 14–2704. Because the Kerns' trust had no such requirement, that presumption did not arise.

¶ 22 Basham, who is Edward and Renee's granddaughter, clearly is within the "class of favored beneficiaries" embraced in *Strobel*. 149 Ariz. at 218, 717 P.2d at 897. Basham is one of the "[s]ettlors' descendants," as the POA provision required. *See* A.R.S. § 14–1201(11) (" 'Descendant' means all of the decedent's descendants of all generations, with the relationship of parent and child at each generation."). She is also "a natural object of the donee's [Renee's]affection." *Strobel*, 149 Ariz. at 218, 717 P.2d at 897. *See* Restatement § 18.3 cmt. e ("The natural objects of the donee's affections would normally include a spouse, a child, a grandchild, or an adopted child.").

¶ 23 With respect to the donee's intent, Wetherill argues that Renee's amendment in 1994 was not an intended exercise of the POA. According to Wetherill, the trial court essentially ruled that "an instrument that was not valid for its intended purpose [became] valid for a totally unintended purpose." Although we cannot say that Renee specifically "intended to exercise" the POA through her 1994 amendment or otherwise, *Strobel*, 149 Ariz. at 217, 717 P.2d at 896, that does not change the result. Renee clearly intended her amendment to change the remainder beneficiary of the entire trust corpus from Wetherill to Basham. Renee never revoked the amendment, and the record reflects no change in her intent after Edward's death, when the POA became exercisable. Under these circumstances, we agree with Basham that the 1994 amendment "manifests [Renee's] intention to exercise every power she had over Trust assets."

¶ 24 In addition, that Renee intended in 1994 to amend the trust, not to exercise the POA, does not necessarily preclude the amendment from later constituting an effective, albeit inadvertent, exercise of the POA after Edward's death. By analogy, Restatement § 17.4 provides: "If a donee, sufficiently identifying property covered by a power, purports to dispose of the property by deed or will, the donee thereby manifests an intent to exercise the power." The rationale for that section is explained in its first comment:

When the donee purports to dispose of property covered by a power, even though the donee does not refer to the power, it is a fair inference that the donee's dominant purpose is to cause the designated beneficiary to receive the property. The method by which this result is obtained is secondary. Therefore, the words used are construed as an expression of intent to appoint.

Restatement § 17.4 cmt. a.

¶ 25 Although Renee's inadvertent exercise of the POA was not "by deed or will," but rather, by an allegedly ineffective amendment to the trust, we believe the rationale underlying Restatement § 17.4 applies equally here. Although Renee's amendment did not refer to the POA, one may fairly infer that her "dominant purpose [was] to cause the designated beneficiary [Basham] to receive the property." Restatement § 17.4 cmt. a. "The method by which this result is obtained is secondary." *Id.*; cf. *Hopkins v. Fauble,* 47 Ill.App.2d 263, 197 N.E.2d 725, 726–27 (1964) ("If the donee of a power intends to exercise a power contained in a will[,] that intention however manifested, whether directly or indirectly, will make the execution of that power valid and operative."); *Tayler v. Tayler,* 243 S.W.2d 310, 317 (Mo.1951) ("Whether an instrument executed by a donee of a power operates as an exercise of that power depends upon the intention of the donee. . . . [W]e look to the terms of the instrument which it is claimed constitutes an exercise of the power, to the circumstances of the parties, and to any proper evidence which may shed light upon the intention of [the donee].") (citations omitted).

¶ 26 Wetherill contends, however, that Basham's argument and the trial court's ruling disregard Edward's intent as a donor. The Kerns' trust stated that "[t]he trusts are primarily for the benefit of the Settlors and their children," and Wetherill is the Kerns' only child. In addition, article X of the trust, relating to administration of the decedent's trust after the survivor's death, immediately followed the POA provision and stated: "Upon the death of the last Settlor to die, the Decedent's Trust shall be distributed in its entirety to the Settlor's daughter," Wetherill.

Based on that language, Wetherill contends Edward's "clearly stated intent . . . was to benefit his daughter," and "an exercise of the POA which disinherits his daughter is contrary to this intent."

¶ 27 Wetherill's argument overlooks several points. First, the POA provision made no exception for article X. Second, both Renee and Edward, not just Edward, were settlors of the trust and potential donors of the POA. Third, the POA provision reflects their mutual intent that the surviving settlor would be authorized to change the trust's beneficiary. Wetherill's interpretation of the trust, based exclusively on Edward's intent, essentially would preclude any such change and guarantee her permanent, irrevocable status as remainder beneficiary, at least of the decedent's trust.

¶ 28 Indeed, at oral argument, Wetherill contended that, even had Renee exercised the POA in strict compliance with the POA provision after Edward's death, it would have been ineffective to divest Wetherill of her interest as sole beneficiary of the decedent's trust. That is so, she argued, because the POA provision's reference to the "Settlors' descendants" implicitly permitted appointment only in the order of the Kerns' descendants, not by "leapfrogging" Wetherill and appointing Basham, a more distant descendant; because the decedent's trust was irrevocable upon Edward's death; and because the mandatory language in article X "trumps" the POA provision.

¶ 29 Nothing in the trust or the law, however, supports Wetherill's argument or the limited effect she would give to the POA provision. Wetherill's interpretation would eviscerate the POA provision, render it superfluous, and deprive the survivor of any authority to exercise the POA in a manner that would adversely affect Wetherill. We decline to construe the trust in that way. *See In re Estate of Pouser,* 193 Ariz. 574, ¶ 10, 975 P.2d 704, ¶ 10 (1999) (when attempting to ascertain testator's intent, we consider text of will as a whole); *Rowland's Estate,* 73 Ariz. at 340, 241 P.2d at 784 (when construing wills, we will not ignore or treat as surplusage any language in the will unless no other conclusion is possible).

¶ 30 Moreover, Wetherill's focus on Edward's testamentary intent apparently is based on an overbroad misconstruction of *Strobel.* The court's reference in *Strobel* to the donor's intent, and the other authorities the court cited on that topic, concern the intent relating to a POA provision and any formal requirements for its valid exercise, not the donor's more general intent relating to disposition of trust property in the event the POA is not exercised. *See American Law of Property* § 23.44, at 578 (A.J. Casner, ed. in chief 1952) ("Stated otherwise, not only must the donee intend to exercise the power but also he must exercise it within the limits prescribed by the donor."); *Cross v. Cross,* 559 S.W.2d 196, 202 (Mo.Ct.App.1977) (donor's intent is relevant insofar as it directs "what shall be deemed to be an exercise of the power [of appointment] granted").

¶ 31 In sum, to deem Renee's 1994 amendment an effective exercise of the POA does not vitiate Edward's contrary intent or defeat his "substantial purpose." *Strobel,* 149 Ariz. at 220, 717 P.2d at 899. Therefore, we uphold the trial court's ruling in favor of Basham because it comports with the Restatement and does not clearly violate equitable principles.

## II. Claims Against Wissler

¶ 32 Wetherill's complaint alleged that Wissler had breached fiduciary duties owed to both her and her father, Edward. The trial court concluded as a matter of law that Wetherill had "no claim for legal malpractice" because she had never retained Wissler; Renee had retained Wissler to disinherit Wetherill from the trust estate and, thus, "[t]he direct object of Mr. Wissler's retention by Mrs. Kern[ ] in all her capacities was adverse to Mrs. Wetherill's interest as a potential beneficiary"; and Wissler owed no contractual or fiduciary duty to Wetherill arising from any attorney-client relationship.

¶ 33 The trial court also found that Renee had retained Wissler in her various capacities as settlor, trustee, and Edward's guardian and conservator. Based on

that finding and on *Fickett v. Superior Court,* 27 Ariz.App. 793, 558 P.2d 988 (1976), Wetherill contends Wissler "clearly owed a duty" to her and "to his client's [Renee's] unrepresented ward, Edward Kerns." [4] The question of Wissler's duty presents a legal issue subject to our de .novo review. *See Wilson v. United States Elevator Corp.,* 193 Ariz. 251, ¶ 5, 972 P.2d 235, ¶ 5 (App.1998); *Toy v. Katz,* 192 Ariz. 73, 85, 961 P.2d 1021, 1033 (App.1997).

¶ 34 In *Fickett,* the conservator of an incompetent's estate sued the attorney for the former guardian, alleging the attorney had negligently failed "to discover that the guardian had embarked upon a scheme to liquidate the guardianship estate by misappropriation and conversion of the funds to his own use and [by] making improper investments for his personal benefit." 27 Ariz.App. at 794, 558 P.2d at 989. In analyzing whether the guardian's attorney owed a duty to the ward, this court stated:

> [T]he determination of whether, in a specific case, the attorney will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injuries suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm.

*Id.* at 795, 558 P.2d at 990. Under the particular "circumstances presented" in *Fickett,* this court concluded that, "when an attorney undertakes to represent the guardian of an incompetent, he assumes a relationship not only with the guardian but also with the ward." *Id.* Accordingly, we upheld the trial court's denial of the attorney's motion for summary judgment because he had "failed to establish the absence of a legal relationship

---

4. Contrary to Wetherill's suggestion, the trial court did not address whether Wissler had owed a duty to Edward Kerns.

and concomitant duty to the ward." *Id.* at 796, 558 P.2d at 991.

¶ 35 We find *Fickett* distinguishable and inapplicable. *Fickett* addressed an attorney's duty to his client's ward, not to the beneficiary of the client's ward. The duty we recognized in that case " 'stem[med] from the attorney's undertaking to perform legal services for the client but ·reach[ing] out to protect the intended beneficiary.' " *Id.* at 795, 558 P.2d at 990, *quoting Heyer v. Flaig,* 70 Cal.2d 223, 74 Cal.Rptr. 225, 449 P.2d 161, 165 (1969). Unlike Wetherill, the guardian's ward in *Fickett* was the intended beneficiary of the attorney's professional services. Here, in contrast, Wetherill was not the intended beneficiary of the services for which Wissler was retained.

¶ 36 Wetherill's reliance on *In re Estate of Shano,* 177 Ariz. 550, 869 P.2d 1203 (App. 1993), also is misplaced. There, the court followed *Fickett* and held that the attorney who represented the personal representative of an estate owed a fiduciary duty to the decedent's estranged spouse who, though not a beneficiary of the will, was a successor to the estate through community property laws. *Id.* at 555, 869 P.2d at 1208. The court in *Shano* noted that *Fickett* had "relied in part upon a California case extending an attorney's duty of reasonable care beyond his client, the testator, to the intended beneficiary of a will drawn by the attorney." *Id.* Again, Wetherill clearly was not the "intended beneficiary" of the services Wissler performed for Renee. *Id.* And, neither *Shano* nor *Fickett* established or recognized any duty an attorney owes to nonclients who are not, at least derivatively, intended beneficiaries of the attorney-client relationship.

¶ 37 Even assuming Wissler owed a duty to Edward as co-settlor of the trust and as the ward of Wissler's client, Renee, that duty would not support Wetherill's claims against Wissler. Wetherill cites no authority for her argument that Wissler's alleged breach of the duty he owed Edward also constituted a breach of duty as to her. Wetherill cannot assert claims against Wissler on Edward's behalf because she is neither a trustee nor the personal representative of his estate. *See* A.R.S. §§ 14–3703(C), 14–7233(C)(25).

¶ 38 Wetherill's status as Edward's last known, intended beneficiary does not warrant imputing any duty Wissler owed to Edward to Wetherill as well. In our view, *Fickett*'s balancing test should not be extended to a two-tiered relationship such as this, in which Wetherill claims Wissler owed a duty to her, the third party of the third party. Our view is fortified by the fact that the interests of Wissler's client, Renee, were diametrically opposed to Wetherill's. It is undisputed that Renee retained Wissler for the sole purpose of amending the trust to remove Wetherill as contingent beneficiary and successor trustee and to substitute Basham in her place.

¶ 39 Although a mechanical application of the balancing test may support Wetherill's position, we do not believe "the public policy of this state permits the imposition of a duty under the circumstances presented here." *Fickett,* 27 Ariz.App. at 795, 558 P.2d at 990. We envision no benefit and much potential mischief from imposing on attorneys a duty to exercise reasonable care to nonclient third parties whose interests are directly adverse to those of the attorney's client. Other courts have rejected any such duty in analogous contexts. *See, e.g., Skarbrevik v. Cohen, England & Whitfield,* 231 Cal.App.3d 692, 282 Cal.Rptr. 627, 634 (1991), *quoting Fox v. Pollack,* 181 Cal.App.3d 954, 226 Cal.Rptr. 532, 536 (1986) (citations omitted) (" '[A]n attorney has no duty to protect the interests of an adverse party for the obvious reasons that the adverse party is not the intended beneficiary of the attorney's services, and that the attorney's undivided loyalty belongs to the client.' "); *cf. Lewis v. Swenson,* 126 Ariz. 561, 564, 617 P.2d 69, 72 (App.1980), *quoting Norton v. Hines,* 49 Cal. App.3d 917, 123 Cal.Rptr. 237, 240 (1975) (" '[A]n adverse party is not an intended beneficiary of the adverse counsel's client.' "); *Logotheti v. Gordon,* 414 Mass. 308, 607 N.E.2d 1015 (1993) (attorney does not owe former beneficiary any duty to investigate testamentary capacity of testator seeking to disinherit that beneficiary).

¶ 40 We also note that Wissler accomplished, albeit indirectly, that which Renee had retained him to do: replacing Wetherill

with Basham as remainder beneficiary of the trust. In the absence of any allegation, let alone proof, that Wissler was negligent toward his client, Renee, Wetherill's claim that Wissler should be held derivatively liable to her, a third party whose interests were directly adverse to Renee's, is dubious. As Division One of this court has stated, "under the *Fickett* test any duty owed by an attorney to a third party is derivative of the duty owed by that attorney to his client," and, "at a minimum, there must be an allegation that the defendant attorney was negligent towards his client before utilizing a *Fickett*-type analysis to determine whether such liability should be extended to a third person." *Franko v. Mitchell*, 158 Ariz. 391, 400, 762 P.2d 1345, 1354 (App.1988). *See also* Joan Teshima, Annotation, *What Constitutes Negligence Sufficient to Render Attorney Liable to Person Other than Immediate Client*, 61 A.L.R.4th 464, at §§ 8–17 (1988).

¶ 41 Wetherill also contends that Renee, as successor trustee, owed a fiduciary duty to trust beneficiaries such as her. Because Renee retained Wissler in all of her various capacities, including trustee, Wetherill contends Wissler also owed a fiduciary duty to her. According to Wetherill, Wissler breached that duty by drafting and having Renee execute the 1994 amendment, knowing "that it violated the express terms and known intent" of the trust. We are unpersuaded by this argument. Renee did not attempt to amend the trust in her capacity as trustee, but rather, in her capacity as settlor and conservator and guardian of Edward's estate. Under the circumstances presented here, Wissler owed no duty to Wetherill based on Renee's status as trustee under Restatement (Second) of Trusts § 326 (1959), as Wetherill contends.

¶ 42 Finally, as the trial court noted, if Wetherill were correct, "no attorney could ever be retained to perform legal services where the purpose is to change a testamentary device where one of the existing beneficiaries is deleted by the change" without being exposed to a malpractice action by the poten-

tial beneficiary. Although it clearly was foreseeable that Wissler's representation of Renee would adversely affect Wetherill, as the disinherited beneficiary, *Fickett*, it would have been impossible and unethical for Wissler to have represented Renee's interest—to disinherit Wetherill—and simultaneously to have fulfilled a duty to Wetherill. *See Shano*, 177 Ariz. at 556, 869 P.2d at 1209 (attorney cannot undertake representation of conflicting interests); E.R. 1.7, Ariz. R. Prof. Conduct, Ariz. R. Sup.Ct. 42, 17A A.R.S.[5] The practice of law has enough potential pitfalls without adding another one that, to us, is not supported by law, public policy, or common sense.

### DISPOSITION

¶ 43 Based on our conclusion that Renee's 1994 amendment effectively exercised the trust's POA and that Wissler owed no duty to Wetherill, we affirm the trial court's order granting summary judgment in favor of Basham and Wissler. We deny the parties' requests for attorney's fees on appeal.

CONCURRING: WILLIAM E. DRUKE, Judge, and M. JAN FLÓREZ, Judge.

---

5. Although Wetherill relies on the rules of professional conduct to support her malpractice claim, we note that those rules "are not designed to be a basis for civil liability." Preamble, Ariz. R.

Prof. Conduct, Ariz. R. Sup.Ct. 42, 17A A.R.S. *See also Elliott v. Videan*, 164 Ariz. 113, 116, 791 P.2d 639, 642 (App.1989).