NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

KARLI B.,
*Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, A.G., B.K,
*Appellees*.

No. 1 CA-JV 14-0336
FILED 7-23-2015

Appeal from the Superior Court in Maricopa County
No. JS17212
The Honorable Bradley H. Astrowsky, Judge

**AFFIRMED**

COUNSEL

Denise L. Carroll, Scottsdale
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Maurice Portley joined.

---

**O R O Z C O**, Judge:

¶1        Karli B. (Mother) appeals from the termination of her parental rights to A.G. and B.K. (collectively the Children).  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        A.G. was born in November 2011.  In April of 2012, Mother filed an order of protection against Harvest G. (Father)[1] following a physical altercation between the parties during which Father choked and hit Mother and broke her cell phone while A.G. was present.  Father was placed on probation and ordered to complete twenty-six domestic violence classes.

¶3        In June 2012, Department of Child Services (DCS) received a report alleging A.G. had been sexually abused.  Mother left A.G. with a friend overnight, and her maternal grandmother picked A.G. up the following day.  After taking A.G. to a hospital, a medical exam revealed A.G. had bruising and injuries to her genitalia.  A.G. went into DCS care that month and was ultimately placed with her maternal grandparents.

¶4        Mother reconciled with Father and had the order of protection quashed, claiming she needed Father's help "getting [A.G.] back."  Mother acknowledged Father had not completed the terms of his probation, but believed he had taken enough classes to "understand fully what domestic violence is."  Mother admitted to participating in prostitution and using drugs during this time.

¶5        The DCS assigned Mother a family preservation team that worked with Mother in several different residences because she did not have her own apartment and lived with Father, a friend, and a cousin from August until October 2012.  The team was concerned that Mother was

---

[1]        Father's parental rights were severed, but he is not a party to this appeal.

unable to provide a stable home for A.G., exhibited a lack of judgment in determining safe and appropriate individuals to allow contact with A.G, was not following through with her substance abuse treatment, and was pregnant in an unstable environment. DCS instituted an out-of-home safety plan to allow Mother to make progress with family preservation services. A.G. was found dependent as to Mother in December 2012.

¶6        B.K. was born in April 2013 and was taken into DCS care at birth. She was later placed in the care of her maternal great aunt and uncle. DCS informed the juvenile court that Mother failed to provide evidence of stable employment, provide appropriate housing, comply with DCS services, address her substance abuse issue, etc. B.K. was found dependent as to Mother in May 2013.

¶7        Mother was referred to Terros Family First for substance abuse treatment, but did not complete the program. She was also assigned a parent aide through Arizona Baptist Children's Services and was scheduled to have twice-weekly visits with the Children. However, she missed sixteen of fifty-two scheduled visits. Mother admitted to not working cooperatively with her parent aide and failing to maintain full-time employment and a stable residence. Mother obtained her own home in February 2014.

¶8        DCS later referred Mother to James S. Thal, Ph.D. for a psychological evaluation. Dr. Thal concluded Mother demonstrated "narcissism, deceitfulness, poor impulse control, lack of remorse, and other self-defeating behaviors." Dr. Thal further opined Mother manifested a significant "character disorder" that would negatively impact the Children and that they could not safely be returned to Mother's care. He recommended severance and adoption as the best case plan for the Children.

¶9        The Children's guardian ad litem petitioned for termination of Mother's parental rights, alleging the Children had been in DCS care for at least nine months and Mother "substantially neglected or willfully refused to participate in services designed to remedy the circumstances that have brought the [C]hildren into care." At the time of the severance hearing, A.G. and B.K. had been removed from Mother's care for just under two years and a little over a year, respectively.

¶10       The juvenile court granted the severance, finding termination proper under Arizona Revised Statutes (A.R.S) section 8-533.B.8(a)-(c), length of time in care, and that severance was in the Children's best

interests. Mother timely appealed and we have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 8-235.A, 12-120.21.A.1, and -2101.A (West 2015).[2]

## DISCUSSION

**¶11**        We review an order terminating parental rights for an abuse of discretion and will affirm if the ruling is supported by sufficient evidence. *Calvin B. v. Brittany B.*, 232 Ariz. 292, 296, ¶ 17 (App. 2013). "We view the evidence in the light most favorable to sustaining the [juvenile] court's ruling." *Id.*

**¶12**        "To terminate parental rights, a juvenile court must first find by clear and convincing evidence. . .the existence of at least one statutory ground for termination pursuant to [A.R.S. § 8-533.B], and must also find by a preponderance of the evidence that termination is in the child's best interests." *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005) (citations omitted).

## I.        Grounds for Termination

**¶13**        The juvenile court concluded severance was proper under A.R.S. § 8-533.B.8(a)-(c), length of time in care. Mother argues "the State failed to prove the essential basis for severance on all counts." We will affirm its ruling if it legally correct on any ground. *Wetherill v. Basham*, 197 Ariz. 198, 202, ¶ 9 (App. 2000).

**¶14**        Mother argues "the evidence produced at trial proved that she has shown a tremendous good faith effort in attempting to reunite with her children." "Because the trial court is in the best position to weigh the evidence, judge the credibility of the parties, observe the parties, and make appropriate factual findings, this court will not reweigh the evidence but will look only to determine if there is evidence to sustain the court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004) (internal punctuation and citations omitted).

**¶15**        We find termination of Mother's parental rights to B.K. and A.G. was proper under A.R.S. § 8-533.B.8(b) and (c), respectively. Under section 8-533.B, sufficient evidence to justify termination includes:

---

[2]        We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

4

8. That the child is being cared for in out-of-home placement under the supervision of the juvenile court, the division or a licensed child welfare agency, that the agency responsible for the care of the child has made a diligent effort to provide appropriate reunification services and that one of the following circumstances exists:

…

(b) The child who is under three years of age has been in an out-of-home placement for a cumulative total period of six months or longer pursuant to court order and the parent has substantially neglected or willfully refused to remedy the circumstances that cause the child to be in an out-of-home placement, *including refusal to participate in reunification services offered by the department*.

(c) The child has been in an out-of-home placement for a cumulative total period of fifteen months or longer pursuant to court order or voluntary placement pursuant to § 8-806, the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future.

(Emphasis added).

**¶16**　　There is no dispute the Children were in an out-of-home placement for the requisite statutory periods. Thus, we consider whether sufficient evidence supports the juvenile court's finding that DCS made a diligent effort to provide unification services and that Mother refused to participate in those services.

**¶17**　　"In considering the grounds for termination prescribed in [A.R.S. § 8-533.B.8], the court shall consider the availability of reunification services to the parent and the participation of the parent in these services." A.R.S. § 8-533.D. However, DCS is not required to "provide every conceivable service or to ensure that a parent participates in each service it offers." *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 235, ¶ 15 (App. 2011) (internal punctuation omitted).

**¶18**　　DCS assigned Mother a family preservation team and assigned her an out-of-home safety plan to help her make progress with the

family reunification plan. She was also referred to the Terros Family First Program, but failed to complete treatment. Mother was also granted visitation with the Children, but missed sixteen of the fifty-two scheduled visits. Moreover, Mother did not obtain stable housing until nearly two years following A.G.'s placement in out-of-home care and a year after B.K.'s birth. The DCS caseworker testified:

> [Mother] has only recently begun to demonstrate any responsibility for – or acceptance of responsibility for what brought [the Children] into care. She still minimizes the domestic violence between herself and [Father] and how that affected [the Children]. She does not recognize how domestic violence in relationships around her affects her ability to safely and appropriately parent [the Children]. She [] continues to be dishonest with her service provider. She is not addressing her mental health issues and knowing that her mental health issues and her domestic violence issues were the main goal, she did not follow through with setting up her second counseling referral.

¶19        On this record, DCS met its statutory obligation to provide reunification services and Mother "substantially neglected or willfully refused to remedy the circumstances that cause[d]" the Children to go into out-of-home care. *See* A.R.S. § 8-533.B.8. *See also In re Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352-53 (App. 1994) (finding severance proper when mother failed to complete DCS recommended drug treatment programs and failed to attend scheduled visits with her children).

¶20        Moreover, sufficient evidence supports a substantial likelihood that Mother "will not be capable of exercising proper and effective parental care and control in the near future" with regards to A.G. *See* A.R.S. § 8-533.B.8(c). When asked if Mother could demonstrate "minimally adequate parenting skills in the foreseeable future," Dr. Thal concluded that the prognosis was poor. He also opined that the Children could be at risk for neglect and abuse while in Mother's care.

II.        The Children's Best Interests

¶21        Mother next argues the trial court erred by finding termination was in the Children's best interest because they are bonded to her and "would suffer a detriment if her rights were terminated." Factors to consider in a determination of a child's best interest include whether: "1) an adoptive placement is immediately available; 2) the existing placement

is meeting the needs of the child; and 3) the children are adoptable." *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 380, ¶ 30 (App. 2010) (citations omitted).

**¶22**        Sufficient evidence supported the juvenile court's finding. The DCS caseworker testified that termination was in the Children's best interest because they had "an anxious bond" with Mother and both had bonded with their caregivers.   She also testified that the Children's caregivers were meeting their "every need" and would be "appropriate placement[s] to adopt" them.   She concluded that the Children were adoptable even if not adopted by their current caregivers because they are "very loving and can form bonds with other individuals relatively easy." Thus, we affirm the juvenile court's ruling.

## CONCLUSION

**¶23**        For the foregoing reasons, we affirm the juvenile court's order terminating Mother's parental rights to the Children.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama

7