NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

ANNE-MARIE O.,
*Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, A.O.,
*Appellee*s.

No. 1 CA-JV 15-0114
FILED 10-6-2015

Appeal from the Superior Court in Maricopa County
No. JD23498
The Honorable Connie Contes, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Phoenix
By Christopher Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Nicholas Chapman-Hushek
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Maurice Portley joined.

---

**O R O Z C O**, Judge:

¶1        Anne-Marie O. (Mother) appeals from the juvenile court's order terminating her parental rights to A.O. (Child).  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        Child was born in March 2013.  Immediately thereafter, Mother began acting erratically in the hospital.  Mother picked up Child improperly—once by her head and once by her arm and at one point, Mother held Child without a diaper, with stool on herself and Child. Mother's behaviors prompted a psychological evaluation, but despite being diagnosed as bipolar in 2005, Mother maintained that she was "gifted" and that her bipolar diagnosis was a mistake.

¶3        In spring of 2013, the Department of Child Safety (DCS) placed Child with her maternal grandmother (Grandmother).  Soon thereafter, Grandmother described Mother as "demented" and feared Child was in "significant danger" with Mother.  DCS then placed Child in a foster home.

¶4        Child could not be placed with Father because he was incarcerated for committing domestic violence against Mother and a history of substance abuse.[1]   Notwithstanding this history, and even though Mother had a protective order against him until May 2013, she continued to want Father to visit Child.

¶5        Mother's behavior became worse in August 2013.  After experiencing delusions, Mother received inpatient psychiatric treatment, where doctors deemed her "persistently and acutely disabled."  Mother was hospitalized from August 2013 through October 2013, and again from

---

[1]      Father's parental rights to Child were severed, but he is not a party to this appeal.

November 2013 through January of 2014. Afterwards, Mother underwent court ordered treatment ending in July 2014. DCS provided Mother with a number of services including multiple parent aide referrals, hands on assistance with parenting skills, and domestic violence counselling.

¶6 In January 2014, the juvenile court found Child dependent as to Mother due to Mother's mental health and her history of domestic violence with Father. The case plan at that time was family reunification concurrent with severance and adoption.

¶7 Dr. Rosengard performed a psychiatric evaluation in February 2014 and opined that the "biggest and most important step" to Mother achieving mental stability is for her to recognize her pathology. However, Mother "expresses absolutely no insight into the severe level of her pathology." Dr. Rosengard further noted that this lack of insight causes Mother to deny her pathology and refuse treatment, which substantially increases the risk of relapse. Finally, Dr. Rosengard concluded that Child would be at risk of neglect with Mother, and it is "likely that [Mother's] pathology . . . will continue for a prolonged, indeterminate period of time."

¶8 In November 2014, Mother showed improvement by bringing appropriate care items when visiting Child, and was somewhat complying with her treatment. However, Mother admitted that she only takes her medication to get Child back—not because she is mentally ill. Mother also continued to struggle with basic parenting tasks, such as forgetting how to change Child's diapers, failing to recognize the different reasons why Child cried and overfeeding Child to soothe her.

¶9 From November 2014 through January 2015, Mother had no stable housing or income. Mother testified that she received Social Security payments for two months, and she recently gave up her apartment and moved back in with Grandmother.

¶10 Since August 2013, Child has lived in a licensed foster home. The DCS case worker testified that the placement is a safe, stable home and the foster parents are committed to adopting Child.

¶11 The juvenile court granted severance, finding termination proper under Arizona Revised Statutes (A.R.S.) sections 8-533.B.3, mental

illness and 8(c), length of time in care (West 2015)[2] and that severance was in Child's best interests. Mother timely appealed, and we have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 8-235.A, 12-120.21.A.1, and -2101.A (West 2015).

**DISCUSSION**

**¶12** We review an order terminating parental rights for abuse of discretion and will affirm if the ruling is supported by sufficient evidence. *Calvin B. v. Brittany B.*, 232 Ariz. 292, 296, ¶ 17 (App. 2013). "We view the evidence in the light most favorable to sustaining the [juvenile] court's ruling." *Id.* "Because the trial court is in the best position to weigh the evidence, judge the credibility of the parties, observe the parties, and make appropriate factual findings, this court will not reweigh the evidence . . . ." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004) (internal punctuation and citations omitted). Instead, we will only determine if there is sufficient evidence to sustain the court's ruling. *Id.*

**¶13** "To terminate parental rights, a juvenile court must first find by clear and convincing evidence . . . the existence of at least one statutory ground for termination pursuant to [A.R.S. § 8-533.B], and must also find by a preponderance of the evidence that termination is in the child's best interests." *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005) (citations omitted).

I.        Grounds for Termination

**¶14** The juvenile court concluded that severance was proper, and we will affirm its ruling if it is legally correct on any ground. *Wetherill v. Basham*, 197 Ariz. 198, 202, ¶ 9 (App. 2000). We find termination of Mother's parental rights to Child was proper under A.R.S. § 8-533.B.8(c), length of time in care.[3]

---

[2]        We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

[3]        Because A.R.S. § 8-533.B requires that only one statutory ground for termination is satisfied, we need not review the applicability of A.R.S. § 8-533.B.3. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002) ("If clear and convincing evidence supports any one of the

¶15        Under A.R.S. § 8-533.B.8(c), sufficient evidence to justify termination includes:

> 8. That the child is being cared for in out-of-home placement under the supervision of the juvenile court, the division or a licensed child welfare agency, that the agency responsible for the care of the child has made a diligent effort to provide appropriate reunification services and that one of the following circumstances exists:
>
> …
>
> (c) The child has been in an out-of-home placement for a cumulative total period of fifteen months or longer pursuant to court order . . . the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future.

¶16        Mother does not dispute that Child has been in an out-of-home placement for fifteen months or longer, or that DCS provided appropriate reunification services. Thus, we will not consider those issues. *See Van Loan v. Van Loan*, 116 Ariz. 272, 274 (1977) ("[F]ailure to raise an issue . . . in briefs on appeal constitutes a waiver of the issue."). Accordingly, we only consider whether sufficient evidence supports the juvenile court's findings (1) that Mother was unable to remedy the circumstances causing Child's out-of-home placement, and; (2) that it is unlikely that Mother will be capable of properly caring for Child in the near future.

¶17        Sufficient evidence supports the juvenile court's finding that Mother is "unable to remedy the circumstances that cause the child to be in an out-of-home placement." *See* A.R.S. § 8-533.B.8(c). Mother contends that, by complying with "all of DCS' services," she remedied the circumstances that caused Child's placement. Notwithstanding Mother's compliance, we consider whether she actually remedied the circumstances that caused Child's placement — not the extent of her efforts to do so. *See id.*

---

statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.").

**¶18**        Mother has not adequately addressed issues relating to her mental illness.  Dr. Rosengard testified that the "biggest and most important step" to Mother achieving mental stability is for her to recognize her pathology.  However, Mother denies her pathology and has recently complied with treatment only to regain custody of Child.  As Dr. Rosengard concluded, Mother is not likely to continue treatment unless forced to do so.

**¶19**        Mother has also not addressed her inability to satisfy Child's daily needs.  The DCS case manager testified that Mother lacks basic parenting skills.  She still struggles with diapering Child, and her only form of soothing Child is with excessive feeding.

**¶20**        Moreover, Mother has not maintained stable income or housing.  Although Mother testified that she received Social Security payments in December 2014 and January 2015, the record contains no other evidence of Mother's income.  Mother's housing situation is also unstable.  As of January 2015, Mother moved in with Grandmother, who previously declined to be a placement for Child.

**¶21**        Sufficient evidence also established a substantial likelihood that Mother "will not be capable of exercising proper and effective parental care and control in the near future."  A.R.S. § 8-533.B.8(c).  Dr. Rosengard opined that Mother's condition is likely to persist for a prolonged and indeterminate time.  If Mother is delusional or hallucinating, she will be unable to care for Child.  In addition, Mother's desire to maintain a harmful relationship with Father puts Child at risk.

**¶22**        Finally, the juvenile court found termination of the parent-child relationship to be in Child's best interests.  Child is placed in a licensed foster home, and the foster parents are committed to adopting her.

**CONCLUSION**

**¶23** For the foregoing reasons, we affirm the juvenile court's order terminating Mother's parental rights to Child.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama