497 P.2d 527

Frances Juliff **TAYLOR** and **Crocker-Citizens** National Bank, a national banking association, as Conservator of the Estate of Frances J. Taylor, Appellants,

v.

Joanne Cuddihy **HUTCHINSON** et al., Appellees.

**No. 1 CA–CIV 1718.**

Court of Appeals of Arizona,
Division 1,
Department A.

June 1, 1972.

Rehearing Denied June 29, 1972.

Review Denied Sept. 12, 1972.

Fennemore, Craig, von Ammon & Udall, by Philip E. von Ammon, Phoenix, for appellants.

Evans, Kitchel & Jenckes, by Ralph J. Lester, Phoenix, for appellees Hutchinson, Perry and Collins.

Moore, Romley, Robbins & Green, by Elias M. Romley, Phoenix, for appellees Cuddihy and Cooper.

STEVENS, Presiding Judge.

This is an appeal from a judgment of the Superior Court for Maricopa County which permitted the joint trustees, hereinafter referred to as trustees, of a testamentary trust to deviate from the express terms thereof, which stated:

"* * * in order to give effect to the overriding intent of the creator of the trust and because, owing to circumstances not known. to Curtis C. Cooper or anticipated by him, compliance with said express terms would defeat or substantially impair the accomplishment of the purposes of the trust."

The facts which gave rise to this judgment are set forth below.

On 23 October 1932, Curtis C. Cooper, herein referred to as the testator, executed

his Last Will and Testament by the terms of which he gave, devised and bequeathed to his wife Nellie H. Cooper, his daughter, Miriam A. Cooper (now Miriam A. Cuddihy), and his son, Curtis C. Cooper, Jr., all of his property, both real and personal, share and share alike.

The trust which is the subject of this litigation was created by the testator on 1 May 1944 when he executed a codicil to his last will and testament which provided that:

"Know all men by these presents that I, Curtis C. Cooper, of Phoenix, Arizona, being of sound and disposing mind and memory, declare this to be a codicil to my last will and Testament.

"1. I wish to express my appreciation for the kindness and service, extending over a period of several years, rendered to me and my family by Anna Ungemach and Dr. and Mrs. A. E. Cruthirds in their homes at various times, for which no compensation was permitted and/or accepted.

"2. I hereby devise and bequeath two thousand (2000) shares of common stock of the General Motors Corporation to my son, Curtis C. Cooper, Jr. and my son-in-law Joseph Cuddihy as joint trustees, in trust however, for the following purposes and subject to the following limitations:

"A. To pay the income thereof to said Anna Ungemach of 640 N 1st Ave Phoenix Arizona during her life.

"B. Upon the death of said Anna Ungemach to pay the income thereof to said Mrs. A. E. Cruthirds (Mrs. Frances Juliff Cruthirds) during her life.

"C. Upon the death of said Frances Juliff Cruthirds, this trust shall terminate and the proceeds thereof be paid over to my grand daughters, Joanne Cuddihy and Carolyn Cooper, and their heirs forever, share and share alike, and the survivor or survivors thereof.

"D. All stock dividends shall be added as principal of the trust and not paid out as income.

"E. The Trustees shall not be required to give any bonds for the faithful performance of their duties.

"F. The Trustees shall have no power to dispose of, transfer, or otherwise convert the principal of this Trust, except upon application to and the approval of the court having jurisdiction, and then only when such disposition, transfer, or conversion is for the best interest of this trust, the beneficiaries thereof, and in accordance with the testators implied intentions.

"In witness whereof, I have hereunto set my hand and seal this 1st day of May, 1944.

CURTIS C. COOPER"

The testator died on 1 January 1948 leaving as surviving heirs his wife, daughter and son, and both his last will and testament and the codicil thereto were subsequently admitted to probate. By order and decree for partial distribution dated 1 March 1949, Curtis C. Cooper, Jr., and Joseph Cuddihy were appointed as trustees under the terms of the testator's codicil and received 2,000 shares of the common capital stock of General Motors Corporation in trust for the purposes and subject to the limitations set forth in said codicil.

Pursuant to the terms of the trust the income from the corpus was paid to Anna Ungemach until her death on 9 August 1950. As a result of a two-for-one stock split on 3 October 1950 and a three-for-one stock split on 7 November 1955, the original 2,000 shares of stock became 12,000 shares. Following the first split which resulted in doubling the number of shares held by the trustees at the inception of the trust, a first account and report was filed in which the trustees declared that they had distributed to Mrs. Cruthirds (herein referred to as Mrs. Taylor) only the in-

come from 2,000 of the shares and that they were retaining the additional 2,000 for the remainderwomen on the theory that the settlor only intended that Mrs. Taylor should receive dividends from the original number of shares.

An objection was filed and The Honorable Fred C. Struckmeyer, Jr., who was sitting in probate at that time, entered an order on 18 June 1952 sustaining the objections and ordering the trustees to distribute all of the income to the life beneficiary irrespective of the number of shares held from time to time.

From August of 1950 through September of 1966 and pursuant to the above-described order, the trustees paid all of the income from the total number of shares in the corpus of the trust to Mrs. Taylor.

On or about 26 August 1966 Mrs. Taylor became physically and mentally incompetent and as a result the income from the testator's trust was paid to the conservator of her estate from October of 1966 through November of 1968. For the five-year period of 1964 to 1968, inclusive, the income paid from the trust corpus averaged $53,640.00 per year. On 1 September 1969 the estate of Mrs. Taylor had a value of $96,152.16.

Acting upon the advice of their counsel, the trustees did not pay to the conservator of Mrs. Taylor's estate the December 1968 dividends which they received from the 12,000 shares of the common capital stock of General Motors Corporation. This refusal to make payments was reflected in the Fifth Account and Report of Trustees, filed on 5 March 1969, and an objection to the report was filed by the appellant-conservator of Mrs. Taylor's estate which requested that the trustees be ordered and directed to pay to the beneficiary all of the income from the trust. On 4 April 1969 the appellees, Joanne Cuddihy Hutchinson and Carolyn Cooper Collins, filed a petition for order authorizing the trustees to deviate from the terms of the trust which requested in part that the trustees be ordered to distribute to or for the account of Frances J. Taylor only that portion of the income from the trust estate necessary for the maintenance, care and comfort of the beneficiary. As of the date of this petition, her expenses for care at the rest home where she was confined entailed approximately $16,000 per year.

The issues framed by these petitions were restated in a complaint filed on 18 April 1969 by the appellees herein, which prayed that a decree be entered directing the trustees to pay to Mrs. Taylor's conservator only so much of the trust income as may be reasonably necessary for her care and maintenance and to accumulate the balance of the income and distribute it together with the trust corpus to the remainderwomen at the time of Mrs. Taylor's death. Responsive pleadings were filed by the appellants and the issues were joined.

A trial was had to the court on 28 April 1970 and judgment in favor of the appellees was entered 12 March 1971. Simply stated, the substance and effect of this judgment was that: (1) It allowed the trustees to deviate from the express terms of the trust; (2) It directed that the trustees distribute to the conservator of the estate of Frances J. Taylor every three months so much of the income of the trust estate as may be necessary for her care, support, maintenance and comfort for the following three-month period as determined by the conservator (this care-amount could be reduced or increased dependent upon the needs of the beneficiary); and (3) It created a sub-trust for the purpose of accumulation of the income in excess of the amount necessary for the care of the trust beneficiary and the expenses of the administration thereof and directed that this surplus was to remain available to her for the purpose of providing care that became necessary. Upon the death of Frances J. Taylor all funds accumulated in this sub-trust would be distrib-

uted in equal amounts to the remainder-women of the original trust, the appellees herein.

■ It is from this judgment that the instant appeal was taken. The issues raised which we deem to be dispositive of this appeal are (1) Will a court of equity permit a trustee to deviate from the expressed terms of the trust if, owing to circumstances not known to the settlor, or not anticipated by him, compliance would defeat or substantially impair the accomplishment of the purposes of the trust?, and (2) Are there circumstances which will permit a court of equity to direct trustees to withhold income from a life tenant and accumulate it for the benefit of remainder-women in the absence of an express provision to that effect? Though these issues are not identical, we are of the opinion that they can be combined and stated as a single issue in accord with the facts of this case, i.e., does a court of equity have the power to authorize withholding from the life tenant any income to which she is entitled under the express provisions of the trust simply because she does not need and cannot spend all of the income therefrom?

> "The basic rule for the interpretation of all wills and trusts is to ascertain the intent of the settlor or testator. The intent is to be ascertained from the contents within the four corners of the instrument, including the general plan or scheme thereof, *and when necessary or appropriate, the circumstances under which the will was made.* (citation omitted) It necessarily follows that the intent of the testator controls in determining what should be considered trust principal and trust income; *it is also this intent which is the controlling consideration in determining the rights as between the life income beneficiaries and the remaindermen under a trust such as we have before us in this case.*" In re Estate of Gardiner, 5 Ariz.App. 239, 240–241, 425 P.2d 427, 428–429 (1967). (Emphasis added).

Simply stated, when it becomes necessary to go outside of the language of a trust to determine the intent of a settlor, the Court places itself in the position of the settlor at the time of the creation of the trust and interprets what he has said or done in the light of his enviromnent at that time. Olivas v. Board of National Missions of Presbyterian Church, 1 Ariz.App. 543, 405 P.2d 481 (1965).

■ When the intention of a settlor is plainly expressed and the language used is not ambiguous, the Court will not go outside of the instrument in an attempt to give effect to what it conceives to have been the actual intent or motive of the settlor. State ex rel. Goddard v. Coerver, 100 Ariz. 135, 412 P.2d 259 (1966).

■ In the instant case the intent of the settlor is abundantly clear, i. e., to pay the income from the trust which he established to Mrs. Frances J. Taylor during her life. It was therefore improper for the trial court to receive extrinsic evidence and look to the circumstances surrounding the execution of the codicil in order to determine the purpose for which the trust was created.

We recognize that:

> " * * * the court will permit a trustee to deviate from the express terms of the trust if, owing to circumstances not known to the settlor or not anticipated by him, compliance would defeat or substantially impair the accomplishment of the purposes of the trust." State ex rel. Goddard v. Coerver, 100 Ariz. at 143, 412 P.2d at 264.

Inasmuch as we are of the opinion that compliance with the express terms of the trust will not defeat the purpose for which the subject trust was created, we are not inclined to probe the past for evidence of the settlor's intent contrary to that which is clearly expressed in the terms of the document which he executed.

The settlor has set no limits on the extent of appreciation that he wished to express by creation of this trust other than that such appreciation should be manifested by the payment of the income of the trust corpus to the designated life beneficiaries until the time of their deaths. No restrictions have been placed upon the manner in which such income could be used or misused. To argue that the purpose of the trust will be defeated if the accumulated income of the trust is either distributed to Mrs. Taylor's collateral heirs or escheats to the State of California is to support the position that the life beneficiary could not spend or distribute the total income from the trust in any manner she saw fit if she were mentally and physically competent to do so. We regard this line of reasoning as being in direct opposition to the specific terms of the settlor's trust which contains no limitations of any kind on the manner in which the trust income is to be used by the life beneficiary thereof.

Under the circumstances of this case and in view of the authoritites cited herein, it is the holding of this Court that the trial court was in error in entering its order which permitted the trustees to deviate from the express terms of the subject trust.

We express no opinion as to the general issue raised with regard to the authority of a court of equity to direct trustees to withhold income from a life beneficiary and accumulate it for the benefit of remainder-women in the absence of an express provision to that effect other than to say that under the facts of this case that issue must be answered in the negative.

The judgment of the trial court is reversed with directions to enter a judgment in favor of the appellants on their counterclaim and crossclaim filed in the trial court.

CASE and DONOFRIO, JJ., concur.