NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

In the Matter of:

The Newbanks Family Revocable Trust
Dated May 16, 1985,

A Trust.

---

NANCI NEWBANKS, *Petitioner/Appellant,*

*v.*

SCOTT H. NEWBANKS, et al., *Respondents/Appellees.*

No. 1 CA-CV 21-0713
FILED 1-5-2023

---

Appeal from the Superior Court in Mohave County
No. S8015PB201900072
The Honorable Lee Frank Jantzen, Judge

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART**

---

COUNSEL

Warner Angle Hallam Jackson & Formanek, PLC, Phoenix
By Jerome K. Elwell, Phillip B. Visnansky, Yvonne S. Tindell
*Counsel for Petitioner/Appellant*

Andersen PLLC, Scottsdale
By Mark W. Hawkins, Mark Andersen
*Counsel for Respondents/Appellees*

---

## MEMORANDUM DECISION

Vice Chief Judge David B. Gass delivered the decision of the court, in which Judge Cynthia J. Bailey and Chief Judge Kent E. Cattani joined.

---

**G A S S**, Vice Chief Judge:

¶1        This case involves a probate and family trust dispute between three siblings—a daughter on one side and two sons on the other. Both parents have passed—mother first, then father. After father died, one of the sons, as trustees of the family trusts, told daughter she no longer had an interest in the trusts. Daughter sought relief in the superior court, but it rejected her claims, ruling she had violated a forfeiture clause in father's will and had no remaining interest in father's sub-trust or in property transferred from father's sub-trust into mother's sub-trust.

¶2        As explained below, we reverse and remand, concluding any alleged forfeiture-clause violation is irrelevant under the controlling documents, and daughter is entitled to an upward adjustment of her share of the assets in mother's sub-trust.

## FACTUAL AND PROCEDURAL HISTORY

¶3        In 1985, mother and father established the family trust. In 2009, mother executed her will. When mother died in 2012, the family trust created two sub-trusts: mother's sub-trust and father's sub-trust.

### I.        Terms of the Sub-Trusts, Will, and Amendments

¶4        The parties do not dispute the terms of mother's sub-trust. Mother's sub-trust and any related terms became irrevocable upon her death. Even so, during father's life, he could use the principal and assets in mother's sub-trust. Upon mother's death, her sub-trust included her share of the community property. In mother's will, she left father all her personal effects, with each child to take one-third of the corpus of mother's sub-trust after father's death.

¶5        As to father's sub-trust, after mother died, he could add, amend, or revoke any term. In 2015, father executed his will and the first

amendment to his sub-trust.[1] About one month before father died in 2018, he executed a second amendment to his sub-trust.

¶6        Upon father's death, his will and first amendment provided his sub-trust would include his share of the community property and any property he did not otherwise dispose of in his will or a sub-trust amendment. Anything remaining in father's sub-trust would roll into—and be distributed under the terms of—mother's sub-trust. Under the second amendment, father expressly excluded daughter and directed all his property to pass to sons directly from his sub-trust with nothing passing to mother's sub-trust.

¶7        When father died, mother's sub-trust was worth $360,550. The value of father's sub-trust at his death was the subject of the litigation. Father's estate and the sub-trusts incurred $335,122 in administrative costs. Before the superior court ruled, sons had used the trust funds to pay $128,400 of those administrative costs, reducing the total assets in the two sub-trusts by that amount. Daughter possessed some of mother's jewelry (which the superior court was not able to value in its entirety) and owed $58,000 on a loan she received from mother and father before mother died. One son also owed $75,000 for an early disbursement.

## II.    Superior Court Rulings After Trial

¶8        After father's death, disputes arose between daughter and sons, beginning when sons sent daughter a copy of the second amendment and told daughter she was "not a beneficiary under the Trust." The disputes included whether and to what extent father's will and the first and second amendments could modify mother's sub-trust and whether sons were properly following the terms of father's will and the family trust.

¶9        After trial, the superior court found four of the five documents controlling: the family trust, mother's will, father's will, and the first amendment. The superior court did not apply the terms of the second amendment, saying it was "more troublesome" because it "was written by one of [the sons] who benefited from the amendment . . . just a month before [father's] death [and though father's] mind was still solid, . . . the timing of the second amendment makes it suspect."

---

[1] Father's will and the amendments refer to the family trust's terms. The parties correctly acknowledge father could only amend his sub-trust, so for clarity this decision refers to father's changes as amending his sub-trust.

¶10 The superior court also found daughter violated the forfeiture clause and removed daughter as father's heir. Specifically, the superior court said,

> The controlling Will dated November 5, 2015 possessed a no-contest clause. The no-contest clause had been violated by [daughter]. She has contested the processing of this estate and Trust on multiple fronts. This includes filing the original Petition for Removal of Trustees, filing, and eventually withdrawing more than a dozen Declaratory Petitions and by generally opposing the processing of the estate by [sons].
>
> Based on the violation of the no-contest clause,
>
> **IT IS ORDERED** removing [daughter] as an heir to this estate.

(Emphasis in original.) The judgment did not include the same level of detail, but it still removed daughter "as an heir to [the] Estate."

¶11 The superior court relied on the first amendment to conclude father intended to limit daughter's inheritance to those items listed in the first amendment. The superior court further ruled daughter could not share in any assets transferred from father's sub-trust into mother's sub-trust.

¶12 As such, and despite finding father disinherited daughter under his will's forfeiture clause, the superior court, based on father's intent under the first amendment, awarded daughter the jewelry still in her possession and the amount (including interest) she owed her parents on the loan they extended to her. The superior court reduced daughter's one-third share in mother's sub-trust by the value of the loan and daughter's one-third share of the probate's attorney fees and costs.

¶13 After adjusting for daughter's one-third share of attorney fees and costs, the superior court found daughter's share was a negative amount. The superior court awarded sons additional attorney fees and costs in an amount equal to the sons' two-third share of the estate's overall administrative expenses. In its calculations, the superior court did not address the reduction in mother's sub-trust resulting from one son's prejudgment disbursement of $75,000 and the prepayment of $128,400 for attorney fees and costs.

¶14 Daughter timely appealed. This court has jurisdiction under article VI, section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21.A.1 and -2101.A.1.

## ANALYSIS

¶15 Daughter argues she did not violate the forfeiture clause in father's will or the first amendment. She also raises several issues about the interpretation and application of the controlling documents to mother's and father's sub-trusts.

¶16 Daughter also disputes the superior court's mathematical calculations about two prejudgment disbursements: (1) an unreimbursed prejudgment $75,000 distribution to one son; and (2) $128,400 in attorney fees and costs. Those disbursements, totaling $253,400, reduced the net value of the monies in both sub-trusts, and the superior court did not take them into account when determining daughter's final share.

¶17 This court reviews the superior court's legal conclusions *de novo. In re Estate of Zaritsky*, 198 Ariz. 599, 601, ¶ 5 (App. 2000). When this court reviews findings entered after a bench trial, it views "the facts in the light most favorable to upholding the [superior] court's ruling." *Bennett v. Baxter Grp., Inc.*, 223 Ariz. 414, 417, ¶ 2 (App. 2010). This court "will not set aside the probate court's findings of fact unless clearly erroneous, giving due regard to the opportunity of the court to judge the credibility of witnesses." *Id.* A finding of fact is not clearly erroneous if substantial evidence supports it. *Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 51–52, ¶ 11 (App. 2009). This court does "not reweigh conflicting evidence" but rather examines "the record only to determine whether substantial evidence exists" to support the superior court's ruling. *In re Estate of Sibley*, 246 Ariz. 498, 501, ¶ 13 (App. 2018) (quoting *In re Estate of Pouser*, 193 Ariz. 574, 579, ¶ 13 (1999)).

## I. Whether daughter violated the forfeiture clause is irrelevant because it does not apply to mother's sub-trust.

¶18 Daughter argues she did not violate the forfeiture clause in father's will and his sub-trust. We agree. Most of daughter's filings related to sons' handling of both sub-trusts, not their "validity or legal effectiveness." To the extent she did challenge the "validity or legal effectiveness" of father's documents, she prevailed in establishing her right to distributions from mother's sub-trust. Even so, sons' arguments on the forfeiture clause miss the mark because any violation would not impact daughter's share of mother's sub-trust.

5

### A. Under the first amendment's plain language, father's sub-trust rolled into mother's sub-trust.

**¶19** This case involves interpreting terms in a will, a trust, and a trust amendment. "The rules of construction that apply in this state to the interpretation of and disposition of property by will also apply as appropriate to the interpretation of the terms of a trust and the disposition of the trust property." A.R.S. § 14-10112.

**¶20** In construing a will or a trust, this court's goal is to determine the trustor's intent. *See In re Estate of King*, 228 Ariz. 565, 567, ¶ 9 (App. 2012); *In re Estate of Zilles*, 219 Ariz. 527, 530, ¶ 8 (App. 2008); *In re Estate of Daley*, 6 Ariz. App. 443, 447 (1967). Still, this court interprets a will or a trust according to its terms. *See KAZ Constr., Inc. v. Newport Equity Partners*, 229 Ariz. 303, 305, ¶ 7 (App. 2012); *In re Trust Estate of Will*, 8 Ariz. App. 591, 594 (1968). When the language of a will or trust is plain, the court will not look beyond the document's four corners to determine the grantor's intent. *See Zilles*, 219 Ariz. at 530, ¶ 9; *see also Pouser*, 193 Ariz. at 579, ¶ 10 (holding extrinsic evidence is inadmissible to contradict a will's plain language).

**¶21** If a written instrument creates the trust, this court determines the trustor's intent from the express language of the instrument. *State ex rel. Goddard v. Coerver*, 100 Ariz. 135, 141 (1966). This court "consider[s] the text of the trust 'as a whole and, when appropriate, the circumstances at the time it was executed.'" *Zilles*, 219 Ariz. 530, ¶ 8 (quoting *Pouser*, 193 Ariz. at 578, ¶ 10 (interpreting a will)); *see also* Restatement (Third) of Trusts § 4 cmt. a (2003) (noting a trustor's intent is determined as of the time of creation of the trust). To that end, this court considers the trust's "general plan or scheme." *See In re Estate of Gardiner*, 5 Ariz. App. 239, 240 (1967). Even so, this court must not go beyond the plain language of the trust "in an attempt to give effect to what it conceives to have been" the trustor's "actual intent or motive." *Taylor v. Hutchinson*, 17 Ariz. App. 301, 304 (1972).

**¶22** With the above in mind, our analysis begins with the first amendment's direction to transfer father's sub-trust into mother's sub-trust and ends with the family trust's direction to distribute all assets in mother's sub-trust equally among the three surviving children. Because those controlling documents are unambiguous, their plain language controls. *See Zilles*, 219 Ariz. at 530, ¶ 9; *see also Pouser*, 193 Ariz. at 579, ¶ 10.

**¶23** Sons concede father could not amend the terms of mother's sub-trust because it was irrevocable upon her death in 2012. As for the

jewelry, sons agree father's attempt to substitute the jewelry he owned for any portion of what daughter was owed under the terms of mother's irrevocable sub-trust—such as "the residences, investment and bank accounts"—"arguably was beyond his discretion as Trustee and was invalid."

¶24        The same is true of the loan. The first amendment's unambiguous terms directed the trustee to add "[a]ll remaining principal and undistributed income" in father's sub-trust to mother's sub-trust. As such, the first amendment was consistent with the family trust, which (upon father's death) moved any "remaining principal and undistributed income" from father's sub-trust to mother's sub-trust. The superior court had to account for the value of the jewelry and the loan as assets in mother's sub-trust. And the three children were to divide mother's sub-trust equally.

### B.        The forfeiture clause could not affect any distribution under father's and mother's sub-trusts.

¶25        Sons argue daughter was disinherited from father's estate and his sub-trust when the superior court enforced the forfeiture clause against daughter. As a result, sons assert, daughter could not take any share of the funds transferred from father's sub-trust into mother's sub-trust. As support, sons rely on father's expressed intent to disinherit daughter in the second amendment even though the superior court did not find that document controlling.

¶26        Sons do not challenge the superior court's finding the second amendment was not controlling. Instead, they argue daughter is wrong in saying the superior "court determined the Second Amendment to be invalid," and sons then argue this court should consider the second amendment as an "additional ground[]" to support the superior court's ruling. To that end, they simply argue this court "should consider the Second Amendment as valid to the extent it supports the probate court's [j]udgment."

¶27        We conclude otherwise. Father's intent in the non-controlling second amendment cannot alter the plain language of the first amendment and mother's sub-trust. *See Taylor*, 17 Ariz. App. at 304 (holding court cannot go beyond plain language "in an attempt to give effect to what it conceives to have been" the trustor's "actual intent or motive"). The same is true to the extent sons argue this court should extend father's intent to disinherit anyone who violated the forfeiture clause. We cannot use father's intent to broaden the plain language of those controlling documents. *See id.*

**II.     The superior court must address (1) the unreimbursed $75,000 distribution to one son; (2) the probate estate's prepaid attorney fees and costs; and (3) the $58,000 loan to daughter held in father's sub-trust and transferred to mother's sub-trust.**

¶28     Daughter raises three more issues. First, daughter argues one son received an additional $75,000 distribution, which the superior court did not include in the combined value of the sub-trusts. Second, daughter argues the superior court made a similar error when it determined the total value of the sub-trusts without adjusting for the $128,400 sons paid in attorney fees and costs. Sons do not dispute these alleged errors, instead they argue the errors make no difference. But the errors affect the total asset value in mother's sub-trust and thus the final distribution amounts. Sons also argue daughter waived the errors, but evidence and daughter's argument at trial addressed the calculation error regarding the one son's unreimbursed $75,000 distribution, and the court's error regarding attorney fees did not arise until it entered judgment. Because daughter preserved the issues in her opening brief, waiver does not apply. *See Harris v. Cochise Health Sys.*, 215 Ariz. 344, 349, ¶ 17 (App. 2007).

¶29     Third, daughter argues the superior court should not have reduced her share of mother's sub-trust by the $58,000 she owed on the amount loaned her by her parents before they died. But when father's sub-trust rolled into mother's sub-trust, the receivable became an asset in mother's sub-trust. *See supra* ¶ 25. As such, much like the $75,000 early distribution one son owes mother's sub-trust, mother's sub-trust holds daughter's receivable as an asset transferred from father's sub-trust. On remand, the superior court also must count the receivable as an asset of mother's sub-trust.

**III.    The superior court must consider any award of attorney fees and costs based on this decision.**

¶30     Because daughter has prevailed on appeal, we reverse the superior court's award of attorney fees and costs and remand the issue to the superior court to determine an appropriate award, if any, of attorney fees and costs based on this decision.

**IV.    We decline to award attorney fees either to sons or to daughter but award daughter her costs.**

¶31     Sons ask for an award of attorney fees and costs on appeal under A.R.S. § 12-349 (appeal lacks substantial justification, is brought to harass, or unreasonably expands the proceedings) and ARCAP 25

(frivolous appeal). Because daughter prevailed on appeal, we deny sons' request.

**¶32**        Daughter seeks an award of attorney fees and costs on appeal under A.R.S. § 14-11004.B. Subsection 14-11004.B gives this court discretion to award "a party's reasonable fees, expenses and disbursements." This court may make such an award if it relates to a "good faith defense or prosecution . . . involving the administration of the trust, regardless of whether the defense or prosecution is successful." *See* A.R.S. § 14-11004.A. In our discretion, we deny daughter's request for attorney fees.

**¶33**        As the prevailing party, we award daughter her costs upon compliance with ARCAP 21.

## CONCLUSION

**¶34**        For the above reasons, we reverse and remand for further proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED:        AA